Page 1

IN THE UNITED STATES DISTRICT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
CIVIL TRIAL DIVISION
------

| | | |
|---|---|---|
| JAMES NACE, et al | : | CIVIL ACTION |
| vs. | : | |
| PENNRIDGE SCHOOL DISTRICT, | : | |
| et al. | : | NO. 15-333 |

------

Tuesday, May 19, 2015 

------

Oral deposition of NANCIANNE EDWARDS, held at

BEGLEY, CARLIN & MANDIO, LLP, 680 Middletown Boulevard,

Oxford Valley Mall, Langhorne, Pennsylvania, beginning

at 3:00 p.m., on the above date, before LANCE A.

BRUSILOW, Registered Professional Reporter, Notary

Public, and Approved Reporter for the United States

District Court.

------

brusilow + associates
255 South 17th Street
Suite 1503
Philadelphia, PA 19103
215.772.1717
www.brusilow.com

------

Appendix1010
0ca949a8-0dd2-4802-ac61-587e81c81c46

Nancianne Edwards

Nace vs. FCA, et al.

May 19, 2015

Page 2

APPEARANCES

HORNSTINE PELLONI & HORNSTINE
BY:  DAVID GROTH, ESQUIRE
1500 Walnut Street
Suite 300
Philadelphia, PA 19102
ph: 215.568.4968
(david@hornstine.com)
Counsel for Plaintiffs

BEGLEY, CARLIN & MANDIO, LLP
BY:  JEFFREY P. GARTON, ESQUIRE
680 Middletown Boulevard
Oxford Valley Mall
Langhorne, PA  19047
ph: 215.750.0110
(jgarton@begleycarlin.com)
Counsel for Quakertown Community School District

MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN
BY:  JOSEPH J. SANTARONE, ESQUIRE
2000 Market Street
Suite 2300
Philadelphia, PA 19103
ph: 215.575.2626
(jjsantarone@mdwcg.com)
Counsel for Faith Christian Academy

EASTBURN & GRAY, P.C.
BY:  ROBERT M. COX, ESQUIRE
60 East Court Street
P.O. Box 1389
Doylestown, PA  18901
ph: 215.345.7000
(rcox@eastburngray.com)
Counsel for Pennridge School District and individual
Pennridge defendants

Page 3

(APPEARANCES - CONT'D.)

CASSIDY CONNOR PITCHFORD
BY:  CARLA E. CONNOR, ESQUIRE
295 East Swedesford Road
Suite #346
Wayne, PA  19087
ph: 610.783.3513
(cconnor@ccplegal.com)
Counsel for FCA, Ryan Clymer and Russell Hollenbach

KELLY, GRIMES, PIETRANGELO & VAKIL, P.C.
BY:  VERONICA N. OLSZEWSKI, ESQUIRE
30 East Second Street
Media, PA  19063
ph: 610.585.0600
(volszewski@kgpv.com)
Counsel for Ryan Clymer and Russell Hollenbach

Page 4

1    (It is hereby agreed by and among
2  counsel that signing, sealing, certification and
3  filing are waived; and that all objections, except
4  as to the form of the question, are reserved until
5  the time of trial)
6         NANCIANNE EDWARDS, having been first
7  duly sworn, was examined and testified as follows:
8              (EXAMINATION)
9  BY MR. GROTH:
10   Q.   Good afternoon, Ms. Edwards.  My name is David
11  Groth, and I represent the Naces in a lawsuit that's
12  currently pending in the Eastern District court in
13  Philadelphia.
14         The subject matter of that litigation is
15  claims involving an individual named Eric Romig, who
16  has pleaded guilty to a number of felonies in
17  connection with some sexual abuse of Ms. Elizabeth
18  Nace, is the name of the young lady, the Nace's
19  daughter, that took place back in the late spring and
20  summer of 2013.
21         I'm not sure if you read anything about the
22  case.  It was in all the local newspapers and widely
23  reported about exactly what Mr. Romig did while he was
24  Elizabeth Nace's softball coach.

Page 5

1         I have asked a representative of Quakertown to
2  testify concerning some facts regarding Mr. Romig after
3  learning that Mr. Romig was a coach at Quakertown High
4  School for a period of years going back, I think, to
5  2007 up until 2009, and I think he resigned on January
6  5th, 2010, based upon documents that Mr. Garton was
7  kind enough to forward to us back on April 1st, 2015.
8         Those documents, by the way, have all been
9  marked as Romig exhibit number two on May 4th, 2015, as
10  part of Mr. Romig's deposition that we took on that
11  date.
12         I'm trying to get some information regarding
13  Mr. Romig's employment history and activities while
14  employed at Quakertown High School, and I sent Mr.
15  Garton a deposition notice asking him to produce a
16  representative or employee or designee of Quakertown
17  Community School District -- I think that's the correct
18  name --
19            MR. GROTH: I think that's the correct
20       name. Is that correct?
21            MR. GARTON:  Correct.
22  BY MR. GROTH:
23   Q.   (Continuing) -- Quakertown Community School
24  District to review the topics that were attached to the

Nancianne Edwards                                                    Nace vs. FCA, et al.

May 19, 2015

Page 10

1          (Exhibit Quakertown-1 was marked for
2      identification.)
3  BY MR. GROTH:
4      Q.   I've marked as Quakertown exhibit one a copy
5  of the deposition notice that is dated April 28, 2015,
6  and that deposition notice has attached to it a list of
7  topics to be discussed during the deposition, and there
8  may be related subject matters related to these topics
9  that we'll discuss as well.
10         Let me show you this deposition exhibit
11 Quakertown exhibit one, and ask if you've seen the
12 attached list of topics to be discussed.
13     A.   Yes, I saw an electronic copy.
14     Q.   And are you the person -- maybe Mr. Garton can
15 represent this -- are you the person that Quakertown
16 Community School District has designated to respond to
17 that deposition notice and to discuss those topics?
18         MR. GARTON:  Yes.
19         MR. GROTH:  Okay.
20 BY MR. GROTH:
21     Q.   Let me just get a little information about
22 you, first of all.  Are you employed by the Quakertown
23 Community School District?
24     A.   Yes.

Page 11

1      Q.   What is your position?
2      A.   Assistant superintendent.
3      Q.   And how long have you held that position?
4      A.   Since July 1, 2014.
5      Q.   Were you employed by the Quakertown Community
6  School District prior to that?
7      A.   Yes.
8      Q.   In what capacity?
9      A.   Director of human resources.
10     Q.   When did you start in that position?
11     A.   September of 2003.
12     Q.   Up until July of 2014?
13     A.   Correct.
14     Q.   And can you just briefly describe your duties
15 and responsibilities as director of human resources
16 during that period of time?
17     A.   I was responsible for all aspects of human
18 resources:  Hiring, firing; in terms of
19 recommendations, labor relations, performance
20 management, employee benefits.
21     Q.   Would that include employee evaluations?
22     A.   Yes.
23     Q.   And back in -- say between 2007 and the end of
24 2009, how did Quakertown Community School District

Page 12

1  handle employee evaluations for coaches?  Specifically
2  not teachers or other staff or whatever, but coaches.
3      A.   I don't know.
4      Q.   Do you know if they were evaluated on a yearly
5  basis?
6      A.   I don't believe so, in a formal sense.
7      Q.   By "formal," I would take it that you're
8  referring to something that's in writing?
9      A.   Correct.
10     Q.   What about in an informal sense, something
11 that's conveyed verbally or in some other method?
12     A.   I do not have personal knowledge of that.
13     Q.   So, is my understanding correct that you don't
14 know whether or not any formal or informal evaluations
15 were done for people in Mr. Romig's position, for
16 example, who was a softball coach at the high school?
17     A.   Correct.
18     Q.   Who would know that?  Who presently at
19 Quakertown might know that?
20     A.   I do not know of any individual at Quakertown
21 that would know that information.
22     Q.   There were a number, according to the
23 documents that Mr. Garton provided, of assistant
24 coaches while Mr. Romig was there, including Beth Rice,

Page 13

1  Mike Cherrybon and Diane Cranmer.
2          Are any of those people still employed at
3  Quakertown?
4      A.   Yes.
5      Q.   Which ones?
6      A.   Mike Cherrybon.
7      Q.   What's his position?
8      A.   He is a math teacher.
9      Q.   Is he a coach, also?
10     A.   I don't know currently.
11     Q.   One of the subjects to be discussed as listed
12 on Quakertown exhibit one was Eric Romig's hiring
13 employment position, employment evaluations and/or
14 reviews and termination or resignation.
15         Did you do any -- strike that.  As I
16 understand it, you don't have any personal knowledge as
17 to whether or not Mr. Romig ever had a formal or
18 informal employment evaluation while he was employed at
19 Quakertown.  Is that correct?
20     A.   Correct.
21     Q.   Did you do any searching?  Did you talk to
22 anybody?  Did you try to look for documents or records
23 to indicate whether or not he had ever been given any
24 type of employment evaluation?

4 (Pages 10 to 13)

Appendix1012
215.772.1717
0ca949a8-0dd2-4802-ac61-587e81c81c46

Nancianne Edwards

Nace vs. FCA, et al.

May 19, 2015

Page 14

1    A.   All records would have been included in the
2   personnel file that we provided.
3    Q.   And are you the person that, in response to a
4   request by Mr. Garton, are you the person who actually
5   did the search of Quakertown's records to find out
6   whether or not there were evaluations and terminations
7   or applications for a job, that type of thing, in his
8   employment file?
9    A.   I had the manager of human resources retrieve
10  the personnel file, and all documents would have been
11  included in that.
12   Q.   And who is that?
13   A.   Zachary Schoch.
14   Q.   And he's a manager of what?
15   A.   He's the manager -- well, now he's director of
16  human resources.
17   Q.   And he did that search of the employment
18  records of Mr. Romig at your request?
19   A.   Correct.
20   Q.   And turned them over to you?
21   A.   He reported to me that he had located the
22  file, and at my direction he made copies of the file
23  and provided it to Mr. Garton.
24   Q.   What is that file called? What do you call

Page 15

1   that file?
2    A.   The personnel file.
3    Q.   And if there were employee evaluations, formal
4   or written in some form, whether it's an email or a
5   letter or some other document, would that document
6   customarily be kept in the personnel file?
7    A.   Yes.
8    Q.   If during the time that Mr. Romig was a coach
9   at Quakertown he was the senior high school girls
10  softball coach, according to the documents, between
11  2007 and the very beginning of 2010, do you know who
12  would be the person responsible for doing the
13  evaluation, whether it was a formal or an informal
14  evaluation?
15   A.   It would have been the athletic director's
16  responsibility.
17   Q.   Who was that at the time?
18   A.   David Babb for most of the time that Mr. Romig
19  was our employee.
20        MS. OLSZEWSKI:  Could you keep your
21    voice up?
22        THE WITNESS:  I will try.
23  BY MR. GROTH:
24   Q.   Mr. Babb eventually left Quakertown to go to

Page 16

1   Pennridge? Is that correct?
2    A.   Yes.
3    Q.   Did he go any place between Quakertown and
4   Pennridge?  Do you know?
5    A.   I do not know.
6    Q.   Was he the person who hired Mr. Romig?
7    A.   I believe so, but there would have been a hire
8   sheet in the personnel file, most likely.
9    Q.   Did you find one -- strike that. Did you have
10  an opportunity to look at and reviews the documents
11  that were in the personnel file that was turned over to
12  Mr. Garton?
13   A.   At the time the file was pulled, yes.
14   Q.   Do you recall seeing an application regarding
15  Mr. Romig's hiring?
16   A.   I don't recall one way or the other.
17   Q.   Do you know whether or not Mr. Babb knew Mr.
18  Romig prior to his hiring at Quakertown?
19   A.   I do not know.
20   Q.   We'll go through the documents after I do some
21  more general questioning.
22        Other than asking Zachary Schoch to look for
23  the personnel file and obtain it and copy it so it
24  could be provided to Mr. Garton, did you communicate in

Page 17

1   any way with other employees of Quakertown in order to
2   get information to address these topics that are listed
3   on the deposition notice?
4    A.   Yes.
5    Q.   Who was that?
6    A.   I spoke with Sylvia Kalazs.
7    Q.   And what issues did you speak to her about?
8    A.   I asked her if she had any information related
9   to Eric Romig or his employment at Quakertown.
10   Q.   Was she the athletic director at Quakertown
11  immediately after David Babb left?
12   A.   I don't recall whether there was a gap between
13  when Mr. Babb left and Ms. Kalazs started, but she was
14  the next athletic director, yes.
15   Q.   But chronologically -- it may not have been
16  the next day, but she was the next person to hold that
17  position?
18   A.   Correct.  I don't recall the timing in
19  between.
20   Q.   Okay. Again, can you describe for us the
21  substance of your conversation or conversations with
22  Ms. Kalazs regarding Mr. Romig's employment at
23  Quakertown?
24   A.   She stated to me that she was not -- I don't

Nancianne Edwards

Nace vs. FCA, et al.

May 19, 2015

Page 18

1  believe she had met him.  Her only contact with him was
2  when he notified her that he was resigning due to
3  health reasons, and that was the extent of her
4  knowledge of him or communication with him.
5      Q.  Do you know whether or not she ever had any
6  direct conversation with him or communication with him,
7  either on the phone or in person, regarding his health
8  issues or the reasons he was giving for resigning?
9      A.  She did not state to me that he gave any
10  details other than to state that he was resigning for
11  health reasons.
12      Q.  I understand that.  My question was, do you
13  know whether or not, after he provided that
14  information -- and I think we'll see a letter or some
15  kind of email from him to her indicating his
16  resignation -- do you know whether or not she had any
17  conversation with him regarding his stated reason for
18  his resignation or any other reason for his
19  resignation?
20      A.  To my knowledge, she did not beyond what I've
21  just stated.
22      Q.  When you talked to Ms. Kalazs, did the topic
23  come up of whether or not at the time Mr. Romig was
24  working for Quakertown he was also coaching for another

Page 19

1  school, Faith Christian Academy?  Did you ask her about
2  that at all?
3      A.  I was not aware of that, no.
4      Q.  Okay.  Do you have any -- I should have asked
5  this first probably -- do you have any personal
6  knowledge of Mr. Romig's employment history while he
7  was employed at Quakertown?
8          And by that I mean did you have anything to do
9  with his hiring or his resignation or evaluations or
10  paying him his salary or anything of that nature?  Did
11  you have any personal contact with him?
12      A.  I had no personal contact with him.
13      Q.  Do you ever recall speaking to him at any time
14  during the years that he worked at Quakertown?
15      A.  No.
16      Q.  Other than your conversations with Mr. Schoch
17  and Ms. Kalazs regarding the topics to be discussed on
18  the deposition notice, did you have any other
19  conversations with any Quakertown employees regarding
20  Mr. Romig's employment tenure at Quakertown?
21      A.  Other than notifying the superintendent of the
22  subpoena, I don't recall any other conversations
23  regarding it.
24      Q.  And who is the superintendents?

Page 20

1      A.  William Harner.
2      Q.  When Mr. Romig was employed by Quakertown,
3  would his direct supervisor have been the athletic
4  director?
5      A.  Yes.
6      Q.  So, it would have been Mr. Babb until Mr. Babb
7  left to take another position, and then after that it
8  would have been Ms. Kalazs.
9      A.  Had Mr. Romig returned to coach the next
10  season, it would have been Ms. Kalazs.  I don't believe
11  she ever supervised him.
12      Q.  As I'm looking at Romig exhibit two, all the
13  documents that Quakertown supplied to us.  I see an
14  email from Eric Romig to Sylvia Kalazs dated January
15  5th, 2010, at 2:33 a.m., in which he informs her of his
16  resignation.
17          I'll give you a chance to take a look at that
18  document.  Have you season that document before?
19      A.  I think that was in the file, yes.
20      Q.  Does that indicate to you that she was, in
21  fact, the athletic director at the time of his
22  resignation?
23      A.  Yes, I believe I already said that she was the
24  athletic director at the time of his resignation.

Page 21

1      Q.  So, she would have had supervisory control
2  over him for some period of time before this
3  resignation took place.
4      A.  I don't recall the date that she began in the
5  position of athletic director in relation to when the
6  end of the softball season would have been the previous
7  year.
8      Q.  Okay.
9      A.  But I don't believe she ever supervised him.
10      Q.  Between 2007 and 2009, when Mr. Romig was
11  employed at Quakertown, did you have anything to do at
12  all with the sports program or the girls softball
13  program specifically?
14      A.  No.
15      Q.  When is the girls softball season -- strike
16  that.  When was it back in 2008, 9 and 10?
17      A.  I assume it was a spring sport, but I do not
18  know.
19      Q.  When a new employee is hired by Quakertown or
20  was hired during that period of time by Quakertown,
21  were they given some policy materials by the school
22  district relating to things such as sexual harassment
23  and drug use or drug-free policy?
24      A.  I do not recall which specific things were

brusilow.com                    brusilow + associates
Appendix1014
215.772.1717
0ca949a8-0dd2-4802-ac61-587e81c81c46

Nancianne Edwards                                                    Nace vs. FCA, et al.

May 19, 2015

Page 22

1  given out at the time Mr. Romig would have been hired,
2  but there are policies that are given to employees and
3  they sign to acknowledge receipt. So, anything he
4  signed to acknowledge receipt would be in the personnel
5  file.
6       Q.   In the file that was sent to us there are two
7  acknowledgments signed by Mr. Romig:  One says
8  "Quakertown Community School District.  Important:
9  Must be returned," and it says "Proof of notification
10  that you have been made aware of and have received a
11  copy of the unlawful harassment policy is required.
12  Please sign, detach and return this slip to the human
13  resources department" and there is a signature and a
14  date of April 19th, 2008.  And there is a similar
15  acknowledgment for a copy of the drug-free workplace
16  policy, also.  I think it's the next document after
17  that.
18       A.   Okay.
19       Q.   Are those the type of acknowledgements that
20  you were just talking about?
21       A.   Yes.
22       Q.   And is every employee given the material that
23  they are acknowledging on those documents?
24       A.   Yes.

Page 23

1       Q.   In the unlawful harassment policy material,
2  can you tell me what basically that policy encompasses,
3  what kind of activity and what the material consists of
4  that's given?
5       A.   I do not have the policy committed to memory,
6  I'm sorry.
7       Q.   Well, what types of things?  When it generally
8  talks about unlawful harassment policy -- would that
9  include sexual harassment, first of all?
10       A.   I'm sure that it would, but I don't have the
11  policy in front of me to review.
12       Q.   Other than providing Mr. Romig with a copy of
13  these policies -- and I take it these were in writing
14  or were in writing at the time?
15       A.   They are in writing now and were in writing
16  then.
17       Q.   And is a copy given to the employee to keep?
18       A.   Yes.
19       Q.   Are you familiar with the Child Protective
20  Services law at all?
21       A.   Yes.
22       Q.   How is it that you're familiar with that?
23       A.   I'm responsible for overseeing human
24  resources.

Page 24

1       Q.   Have you been trained in the requirements of
2  that law?
3       A.   We have not done our formal training yet, no,
4  but I'm familiar with the requirements of the law.
5       Q.   When you say you haven't done it yet, what
6  does that mean?
7       A.   There is a specific training module that is
8  required to be given to all employees.  It consists of
9  three hours of very specific training once every five
10  years.
11       Q.   Would that include giving it to a new hire. .
12  .
13       A.   Yes.
14       Q.   . . .upon their hiring?
15       A.   Yes.
16       Q.   And when you say "training module," that's
17  something where actually some trainer comes in and
18  trains somebody in a conference room-setting or some
19  other type of setting?
20       A.   The module that we are using is electronic.
21       Q.   Electronic.  Do you go on a website or
22  something?
23       A.   Yes.
24       Q.   How long has that been in place?

Page 25

1       A.   The Bucks County IU developed the module for
2  Bucks County school districts, and they are expecting
3  to release it momentarily.
4       Q.   It hasn't been used yet?
5       A.   It has to be approved by the Pennsylvania
6  Department of Education before it can be used to meet
7  the requirements of the law, and it is currently in
8  that approval process.
9       Q.   Back in 2008, 9 and 10, there was no such
10  training module, correct?
11       A.   No, correct.
12       Q.   Was there any other type of training that was
13  done at the time?  And by that I mean where employees
14  were actually called in and given a seminar or a speech
15  or explained verbally exactly what the harassment
16  policy was, including sexual harassment.
17       A.   No, there was not specific training on that.
18       Q.   So, back at the time Mr. Romig was there, it
19  would be a situation where he would be provided with
20  the policy materials in writing and then he would
21  acknowledge that he received it, but in terms of
22  reading it and understanding it and whatever, that was
23  his obligation.
24       A.   Yes.

Nancianne Edwards                                                                Nace vs. FCA, et al.

May 19, 2015

Page 26

1    Q.  Okay.  If there were questions about any of
2  the policies that he was made aware of by virtue of a
3  written handout, would you have been the person, as HR
4  head, to consult to address any questions or issues
5  with regard to the policy?
6    A.  Yes, most likely.
7    Q.  Do you recall him ever doing that?
8    A.  No, he did not.
9    Q.  This acknowledgment that we just looked at
10  with regard to the unlawful harassment policy just says
11  that it was received -- that the employee has been made
12  aware of and has received a copy of the policy.
13      Is there anything that Quakertown did at the
14  time to make sure that the employee actually read the
15  material that was given to the employee?
16    A.  No.
17    Q.  Is there anything done now to make sure that
18  they have actually reviewed the material that they have
19  been given?
20    A.  Well, they're signing an acknowledgement that
21  indicates that they have received it.
22    Q.  And I was going a step beyond that. It says
23  "This is an acknowledgment that you have been made
24  aware of and have received a copy of."

Page 27

1      My question was one step beyond that:  Was
2  there any follow-up, then, to see if the employee ever
3  actually read the policy?
4    A.  No.
5    Q.  Did you follow at all the reporting in the
6  press -- the media, print media, visual media --
7  regarding Mr. Romig's problems at Pennridge?
8    A.  I am aware of it.  I don't recall whether I'm
9  aware of it because I read a news account or someone
10  spoke to me about it, but I am generally aware of it.
11    Q.  At some point in the criminal investigation of
12  Mr. Romig with regard to his activities with Elizabeth
13  Nace at Pennridge High School, did anybody from the
14  Bucks County District Attorney's Office or the Bucks
15  County Detectives come to Quakertown to ask questions
16  about his employment history at Quakertown?
17    A.  Not that I recall.
18    Q.  You're not personally aware of any detective
19  making inquiries at Quakertown with regard to Mr.
20  Romig's employment history or personnel records or
21  anything like that?
22    A.  I recall receiving this request and a prior
23  request, but I don't recall who the prior request was
24  from, a subpoena for his personnel records.

Page 28

1    Q.  Oh, okay.  And the other requests that you're
2  talking about, the prior requests, that was before the
3  request that was made in this case.  Is that correct?
4    A.  Yes, it was sometime ago.
5    Q.  Were you the person who responded to that
6  prior request for the personnel file?
7    A.  My office would have.  I don't recall if I did
8  it personally and had someone pull the file.
9    Q.  Do you know whether or not the file that was
10  pulled and provided to whoever requested it before the
11  request in this case was the same file that was
12  provided to us?
13    A.  It should have been, yes.
14    Q.  But you don't know for a fact whether or not
15  that was somebody from the District Attorney's Office
16  in Bucks County or the county detective's office.
17    A.  I don't recall.
18    Q.  Do you recall seeing the written request, the
19  prior written request?
20    A.  Well, I must have seen it because I'm aware
21  that it existed, and I got the file or directed someone
22  else to get the files.
23    Q.  And do you recall that the form of the prior
24  written request was a subpoena?

Page 29

1    A.  I don't recall what it said, but if it were
2  not a subpoena, then we would not have provided the
3  documents.
4    Q.  The assistant district attorney who handled
5  the case against Mr. Romig with regard to Elizabeth
6  Nace was Jennifer Schorn.  Does that name ring a bell
7  at all?
8    A.  No, sir.
9    Q.  The detectives that investigated the case for
10  Bucks County were David Kemmemer and another detective
11  named Slattery.  Do those names ring a bell with you at
12  all?
13    A.  No.
14    Q.  Do you know if Quakertown turned over any
15  additional information in response to that prior
16  request regarding Mr. Romig other than the personnel
17  file?
18    A.  Not to my knowledge.
19    Q.  Do you know if there was any contact made with
20  any representatives or employees of Quakertown by the
21  Bucks County district attorney or assistant district
22  attorney or the Bucks County Detectives after you
23  provided those documents?
24    A.  Not that I recall.

8 (Pages 26 to 29)

Appendix1016
0ca949a8-0dd2-4802-ac61-587e81c81c46

Nancianne Edwards

Nace vs. FCA, et al.

May 19, 2015

Page 30

1    Q.   Do you ever recall reading any information in
2    the print media to the effect that there were some
3    suspicions based upon the investigation of Mr. Romig
4    that he may have engaged in sexual abuse or sexual
5    harassment while he was employed at Quakertown?
6    A.   No, I don't recall reading that.
7    Q.   Did it ever come to your attention at any time
8    before today that Bucks County Detectives interviewed
9    any former students of Quakertown with regard to Mr.
10   Romig's activities and employment at Quakertown?
11   A.   I was not aware of that.
12   Q.   Are you familiar with a prior student who
13   attended Quakertown named Alicia Hughes?
14   A.   Yes.
15   Q.   How do you know her?
16   A.   She's a current employee.
17   Q.   In what capacity?
18   A.   She was a special-education teacher.
19   Q.   Was she like first grade or second grade or
20   something?
21   A.   Special-education.
22   Q.   That's not grade-dependent?
23   A.   No.
24   Q.   How long has she been employed by Quakertown?

Page 31

1    A.   I believe this is her second year.
2    Q.   Did you ever discuss Mr. Romig with Alicia
3    Hughes at any time?
4    A.   No.
5    Q.   Did you ever find out from any source that
6    Alicia Hughes had been contacted by the Bucks County
7    detectives to talk to her about Mr. Romig?
8    A.   No.
9    Q.   So, this is all, what I'm telling you, new
10   today?
11   A.   Yes.
12   Q.   Would Quakertown, in its records, have a list
13   of all of the members of the high school girls softball
14   team for the years during which Mr. Romig coached?
15   A.   I don't know.
16   Q.   Would there be something in a yearbook or some
17   other type of athletic department publication that
18   would indicate who the team members were?
19   A.   I don't know.
20   Q.   Is there a yearbook that's published every
21   year?
22   A.   Yes.
23   Q.   And does that generally have pictures of
24   sports teams and photos -- photos of sports team

Page 32

1    members and that type of thing?
2    A.   I have never looked at a yearbook.  I assume
3    it contains such photographs, but I don't know.
4    Q.   Do you recall approximately when you first
5    became aware of Mr. Romig's criminal problems with his
6    employment at Pennridge?
7    A.   I don't specifically recall, no.
8    Q.   Again, just to give you some kind of time
9    line, I think he was arrested on October 1st of 2013
10   and pled guilty sometime in January 2014, and was
11   sentenced to three and a half to seven years in prison.
12       Do you recall learning any of that information
13   when you saw or read media reports?
14   A.   I am generally aware of what occurred, but I
15   couldn't tell you exactly when or through what medium I
16   became aware.
17   Q.   Regardless of how you became aware, you were
18   aware when you saw these media reports that he had been
19   a prior employee at Quakertown, correct?
20   A.   Actually, no.
21   Q.   When did you first become aware of that?
22   A.   I believe when we received the first subpoena.
23   Q.   At that time, whether the subpoena was from
24   the DA or County Detectives or some other agency or

Page 33

1    whatever, was there any internal review at Quakertown
2    of Mr. Romig's employment history while he was at
3    Quakertown?
4        In other words, did anybody get out his
5    personnel file, take a look at it, start asking some
6    questions about, you know, what he may or may not have
7    done while he was a coach at Quakertown?
8    A.   Well, that's an awfully long question.
9    Q.   I can shorten it for you if you like.
10   A.   When I received the subpoena, then we checked
11   the database to see if, in fact, he had been an
12   employee.  And when we saw that he had been an
13   employee, then we retrieved his personnel file, which
14   would have been archived in the vault by that time.
15       So, those are sort of steps we followed once
16   we received notification of the request for his
17   records.
18   Q.   And are those records kept on the premises?
19   A.   Yes.
20   Q.   And where is that?
21   A.   100 Commerce Drive, Quakertown.
22   Q.   I think my question before that went one step
23   beyond that:  In addition to retrieving the personnel
24   file from archives, was there any internal review of

9 (Pages 30 to 33)

Appendix 1017
215.772.1717
0ca949a8-0dd2-4802-ac61-587e81c81c46

Nancianne Edwards

Nace vs. FCA, et al.

May 19, 2015

Page 34

1  Mr. Romig's employment history in view of this request
2  for his personnel file?
3       In other words, was there a discussion between
4  any administration or staff of Quakertown regarding
5  their recollections of Mr. Romig's employment history?
6       A.  No.
7       Q.  As part of your search for information to
8  respond to the topics that were attached to the
9  deposition notice, did you attempt to contact Mr. Babb,
10  David Babb, since he was the person who you believe
11  hired Mr. Romig and also the person who was the
12  athletic director during the bulk of Mr. Romig's tenure
13  at Quakertown?
14       A.  No, I did not.
15       Q.  When is the last time you had any contact with
16  Mr. Babb?
17       A.  It would have been a couple of months
18  following his resignation.
19       Q.  For what purpose was that?
20       A.  He did not repay final overpaid salary.  We
21  made several attempts to collect it after his last day
22  of work.
23       Q.  Did you ever do that?
24       A.  No, he did not ever repay it.

Page 35

1       Q.  Do you know how much money it was?
2       A.  I don't recall.
3       Q.  Was it thousands of dollars?
4       A.  I don't recall.
5       Q.  Did he ever respond to your inquiries?
6       A.  Not to my recollection.
7       Q.  Were those inquiries in writing or verbal?
8       A.  As I recall, I sent him a couple of letters:
9  First notice, second notice, that kind of thing.
10       Q.  Did you ever turn it over to a collection
11  agency?
12       A.  No.
13       Q.  So, at the time that you were doing that,
14  sending him letters about his failure to repay his
15  salary that was overpaid, you didn't have personal
16  contact with him or direct contact with him.  It was
17  just sending him letters?
18       A.  I had several conversations with him about the
19  overpayment, but I believe it was prior to his actual
20  date of resignation and then afterwards followed up in
21  writing.  That's my recollection.
22       Q.  Can you tell me why he resigned?
23       A.  My understanding is he resigned to accept a
24  position at Pennridge.  He preferred to work there.

Page 36

1       Q.  Was Mr. Babb given employment evaluations
2  during his tenure at Quakertown as athletic director?
3       A.  Yes, he was.
4       Q.  Who evaluated him?
5       A.  The high school principal.
6       Q.  Who was that?
7       A.  It would have been several different
8  individuals over the term of his employment.
9       Q.  What about in 2008 to 9?
10       A.  I want to say that was when Anita Serge was
11  high school principal, but I may have the timing off.
12       Q.  Let me just go down a list of topics that were
13  attached to the deposition notice we've marked as
14  Quakertown exhibit number one.
15       The first subject to be discussed was "Eric
16  Romig's hiring, employment position, employment
17  evaluations and/or reviews and
18  termination/resignation."
19       Would it be correct to say that all the
20  information that you have about those issues is
21  basically contained in the personnel record that Mr.
22  Garton provided to the attorneys?
23       A.  Yes.
24       Q.  Item number two to be discussed is

Page 37

1  "Complaints, allegations, or accusations regarding Eric
2  Romig's job performance or behavior, including but not
3  limited to any suspicious and/or rumors regarding any
4  suspected inappropriate behavior toward female students
5  or athletes, such as inappropriate physical contact,
6  texting, language, photos or videos directly to, or
7  exchanged with, female students."
8       What attempts did you make to obtain any
9  information that would be responsive to that subject or
10  topic?
11       A.  I was the person to whom such complaints would
12  have been directed, and I received none during the term
13  of his employment.
14       Q.  If you had received a complaint or an
15  accusation from a female student regarding any coach --
16  not just him but any coach's conduct, whatever -- would
17  that be something that would be put in writing and put
18  in a file somewhere?
19       A.  Yes.
20       Q.  What's the name of the file that would be put
21  in?
22       A.  It would be in the personnel file.
23       Q.  No other file? There wasn't a separate file
24  established for that type of accusation or complaint?

Nancianne Edwards

May 19, 2015

Nace vs. FCA, et al.

Page 38

1    A.   No.
2    Q.   Back in 2007 or 8 or 9, if there was an
3  accusation made or allegation made against an employee
4  by a female student, what was the process back then to
5  investigate that allegation or accusation?  Just
6  generally speaking, what was the process?
7    A.   Well, the process for any allegation of
8  misconduct would be conducting an interview with the
9  complainant and documenting the responses; requesting
10  them to put their complaint in writing so that we have
11  a written record of exactly what they said;
12  interviewing whoever the person who is alleged to have
13  committed the misconduct, interviewing that person,
14  with union reputation if they were a bargaining unit
15  employee, questioning them; determining the names of
16  any witnesses or other people who might have firsthand
17  knowledge of whatever the misconduct is, interviewing
18  those people; reaching a conclusion about what I
19  believe to have occurred in the situation, determining
20  the appropriate level of discipline for the employee.
21       If there was an allegation that required a
22  ChildLine report, that report would have been made --
23  now it's made immediately.  The procedure at that time
24  was to do at least a preliminary investigation to make

Page 39

1  sure that whatever it was was founded prior to making a
2  report, which was in compliance with the law at that
3  time.
4    Q.   Let me just ask about that for a second. You
5  said now notifying ChildLine is immediate upon the
6  accusation?
7    A.   Yes.
8    Q.   That changed December 31st, 2014?
9    A.   Yes.
10    Q.   Before that, if I understand your testimony
11  correctly, was it the process that you would do the
12  initial investigation before determining whether or not
13  to contact ChildLine?
14    A.   Yes.  The previous process was to at least do
15  an initial review of the information to make sure that
16  there was actually a complaint that needed to be
17  reported before reporting it.  Now we just report it
18  and then do the investigation subsequently.
19    Q.   And back then the process was, if there was an
20  employee that had brought an allegation or
21  accusation -- strike that.
22       The process previously, before December 31st,
23  2014, was that if an employee learned of an accusation
24  or an allegation of sexual abuse of a student, that

Page 40

1  employee would be directed to you -- basically to the
2  administration -- to investigate it as opposed to the
3  employee reporting it directly to ChildLine.  Was that
4  the process?
5    A.   I think they do both.
6    Q.   They do both?
7    A.   I believe they would do both.
8    Q.   Are you aware whether or not the law changed
9  now so that, for example, a teacher is supposed to
10  report directly to ChildLine after December 31st, 2014?
11    A.   Yes.
12    Q.   All right.
13    A.   Well, everyone with knowledge is required to
14  report now as soon as they have the knowledge, without
15  waiting for any type of investigative process to take
16  place.
17    Q.   Back in 2007, 8 and 9, if there was an
18  allegation made by a female student against a male
19  employee of Quakertown that there was inappropriate
20  texting, texting of a sexual nature, texting to try to
21  induce or persuade somebody to engage in some kind of
22  sexual activity with an employee, is that the type of
23  thing that you would have as head of HR reported to
24  ChildLine?

Page 41

1    A.   Yes. I would have removed the employee from
2  work pending the completion of the investigation.
3    Q.   Even if there was no allegation or accusation
4  of any physical contact.
5    A.   Yes.
6    Q.   What about if the allegation or accusation was
7  that there was a request made for sexually explicit
8  photographs or videos made by an employee of Quakertown
9  to a student?
10    A.   Yes.
11    Q.   That would require a notification to the
12  ChildLine, too, correct?
13    A.   That would have been reported to ChildLine,
14  yes.
15    Q.   Is there a specific office or person at the
16  Department of Public Welfare that was responsible for
17  addressing or responding to complaints that you would
18  have made to ChildLine with regard to the behavior of
19  one of your employees?
20    A.   A specific person?
21    Q.   Yes --
22    A.   Not to my knowledge.
23    Q.   -- back in 2007, 8 or 9 --
24    A.   Not to my knowledge.

11 (Pages 38 to 41)

Appendix1019
215.772.1717
0ca949a8-0dd2-4802-ac61-587e81c81c46

Nancianne Edwards                                                    Nace vs. FCA, et al.

May 19, 2015

Page 42

1   Q.   Did you ever have any contact with any
2   specific person at the Department of Public Welfare or
3   Department of Education with regard to any employee's
4   behavior?
5   A.   I have to say I don't know.
6   Q.   Okay.  Let's go on to the third subject to be
7   discussed as listed on the deposition notice:  "Any
8   facts or information indicating that Eric Romig
9   attempted to induce, entice, persuade, convince or
10  coerce any female student to engage in any form of
11  inappropriate or explicit sexual activity."
12       From your own answers that you've already
13  given me to other questions, can I assume that there
14  were no such facts or information of which you were
15  ever made aware personally?
16  A.   That is correct.
17  Q.   And if a complaint or allegation had been made
18  about that type of behavior, it would have to go
19  through you?
20  A.   That is correct.
21  Q.   Okay.  So, even if somebody that you
22  supervised got the information, they would still have
23  to come to you and you would be aware of it.
24  A.   Yes.

Page 43

1   Q.   Subject number four is "Any concerns,
2   problems, complaints or issues regarding Eric Romig's
3   coaching activities at Quakertown between 2007 and
4   2010, inclusive."
5       That topic is not limited to just sexual
6   harassment or abuse or that type of thing, but any type
7   of employment-related problem:  Complaint by a student,
8   by a parent, by a coworker, anything of that nature at
9   all.
10      Did you do anything to find out if that ever
11  occurred?
12  A.   Nothing was reported to me regarding his
13  employment.  Lower-level concerns about how he coached
14  the team or things like that would have been reported
15  to the athletic director, who was no longer employed by
16  Quakertown.
17  Q.   Do you recall at any time when Mr. Babb was
18  the athletic director and supervisor of Mr. Romig
19  whether or not Mr. Babb came to you with any issues,
20  problems, concerns, complaints, whatever, about Mr.
21  Romig's performance as a coach or his behavior toward
22  any of his players?
23  A.   No, he did not.
24  Q.   Number five is "Any information regarding any

Page 44

1   health issues or problems experienced by Eric Romig
2   during his employment by Quakertown."
3       Other than the facts that he gave to
4   Quakertown in his resignation that I think I already
5   showed you previously in the deposition, are you aware
6   of any other details concerning that health issue or
7   any other health issues that Mr. Romig may have been
8   experiencing while he was an employee of Quakertown?
9   A.   No.
10  Q.   Number six is the last topic, and it's "Any
11  facts and information, as well as any rumors,
12  suspicions or accusations regarding an inappropriate
13  personal relationship between Eric Romig and Alicia
14  Hughes, and/or any other female student or athlete at
15  Quakertown."
16      Based upon your review of records or your
17  attempting to find information on this particular
18  topic, did you find anything that could provide some
19  facts on that subject?
20  A.   No.
21  Q.   I just want to look at some of the documents
22  that you did provide me so I know what I'm looking
23  at -- make sure I know what I'm looking at.
24      The first sort of half of the documents that

Page 45

1   were provided all give the names of employees and what
2   their -- I'm sorry, all give the names of what looks
3   like extracurricular activities, people involved in
4   extracurricular activities for Quakertown.
5       Let me just ask you to look at these pages
6   right here first and just generally describe what they
7   are for me.
8   A.   Yes, this is the extra-duty placement guide,
9   which is a list of all co-curricular positions and who
10  is recommended by the principal to fill them and the
11  pay rate associated with them.
12  Q.   And we'll get to the application, I think,
13  that Mr. Romig made to Quakertown in a second, but
14  would the process back then have been that the athletic
15  director made a recommendation to the principal to hire
16  a particular coach?
17  A.   It would have been a combination of the
18  athletic director and the principal, generally
19  speaking.
20  Q.   And who gets the say in whether or not
21  somebody gets hired?
22  A.   Final say would probably belong to the
23  principal.
24  Q.   Does the principal have to get the okay or

Page 46

1  authorization from the board or superintendent or
2  assistant superintendent?
3      A.  Well, the school board approves all hiring.
4      Q.  Okay.  And there is a page, page three, for
5  the 2007/2008 school year that lists Mr. Romig as the
6  head coach of the senior high girls softball team at a
7  salary -- it doesn't give the salary.
8          Am I reading that correctly? I put a red
9  asterisk down at the bottom of the page.  That's the
10  indication that he was hired as a coach that year for
11  the girls softball?
12      A.  Yes, and the rate of pay would have been one
13  of these three rates, depending on whether he had -- if
14  he had one year of service, the rate of pay would have
15  been $3,135.38.
16      Q.  Was there an actual contract that was signed
17  by Mr. Romig for his employment as a coach?
18      A.  I don't believe so.
19      Q.  And by "contract," I'm talking about a written
20  document signed by both parties that says you are
21  employed in a certain position from a certain date to
22  another certain date at a pay rate of X amount of
23  dollars.
24      A.  All employees after board approval receive a

Page 47

1  letter confirming that the board has approved their
2  appointment to such-and-such a position.  I do not
3  recall whether at that time period we did those letters
4  for unit-pay positions or not.
5      Q.  I'm sorry, I missed that last part.  Unit-pay
6  positions?
7      A.  That's what those are, extracurricular.
8      Q.  There is another document in that group of
9  documents for the school year 2008/2009.  At the bottom
10  it says page three.  That also shows Eric Romig again
11  being hired as a girls softball coach for that school
12  year.  Is that correct?
13      A.  Yes.
14      Q.  And that really would have been, since it's a
15  spring sport, we're talking about 2009.
16      A.  Yes.
17      Q.  There is a document from Sylvia Kalazs sent on
18  January 5th, 2010 to Gloria Hrabina regarding Mr.
19  Romig's resignation.
20      A.  Uh-uh.
21      Q.  First of all, who is Gloria Hrabina?
22      A.  She was the human resources assistant at that
23  time.
24      Q.  Your assistant.

Page 48

1      A.  Yes.
2      Q.  It looks like -- and I can't tell from this
3  document.  I assume it's a forwarding of an email from
4  Mr. Romig to Ms. Kalazs, or is it just --
5      A.  No, it looks like Ms. Kalazs forwarded the
6  email from Mr. Romig to Ms. Hrabina, whose job it was
7  to process the resignation.
8      Q.  Okay.  In that resignation memo, Mr. Romig
9  says "If you would like an official letter or
10  resignation, I can do that for you."
11          Do you know if Quakertown ever got anything
12  more from him than this document?
13      A.  No.  It would be in the file if he had
14  submitted something else.
15      Q.  That was dated January 5th, 2010.  There is a
16  letter from you to Mr. Romig on Quakertown Community
17  School District stationery dated January 15th, ten days
18  later, notifying Mr. Romig that his resignation had
19  been approved by the Quakertown Community School
20  District Board of School Directors at its meeting on
21  January 14th, 2010.
22          The 2010 season, the spring season 2010, had
23  not taken place yet.  Do you know if he was paid
24  anything prior to the beginning of that season?

Page 49

1      A.  I don't have any personal knowledge of that,
2  but I do not believe that he would have been paid at
3  that point in the year for any portion of coaching for
4  a spring sport.
5      Q.  Can you tell me generally when a coach that
6  coaches a spring sport gets paid?
7      A.  They get paid, I believe, in unit pays three
8  and four, which are later in the winter as the spring
9  season is starting, and then I believe the last one is
10  in May.
11      Q.  A final payment in May?
12      A.  Yes.
13      Q.  At the end of the season.
14      A.  Something like that, yes.
15      Q.  There is a document entitled "Quakertown
16  Community School District Unit Pay Change Form." It
17  gives the name of Eric Romig as "employee resigning"
18  and under "position posting" it says "Yes, posted."
19          Is this simply an authorization on the day
20  after you sent your letter to Mr. Romig confirming that
21  his position is now being posted for a new coach of the
22  girls softball team?
23      A.  Well, this would not go to him.  This would be
24  our internal tracking sheet that would confirm that he

13 (Pages 46 to 49)

Nancianne Edwards                                                                    Nace vs. FCA, et al.

May 19, 2015

Page 50

1    resigned and authorized the posting for a replacement.
2        Q.   Okay.  There is another document -- actually,
3    the same resignation memo that was emailed to Sylvia
4    Kalazs from Eric Romig on January 5th, 2010.  The
5    subject of that email is listed as "college athletes."
6    I don't know if you took any notice of that before.
7            Do you have any idea -- and I don't want you
8    to guess what's in his head -- do you have any idea of
9    what that refers to?
10       A.   No, I don't.
11       Q.   In that email to Ms. Kalazs Mr. Romig says
12   "Let me know what you need from me" in his final
13   sentence.
14           Do you know whether or not anything further
15   was requested from him before you accepted his
16   resignation?
17       A.   I don't believe so.  It would not have been
18   customary to request any additional information.
19       Q.   I guess as a point of interest:  Why does the
20   school board have to approve a resignation?  Is there
21   something they can do to not approve a resignation?
22           MR. GARTON:  It's a statutory thing.
23           MR. GROTH:  Oh, okay.
24   BY MR. GROTH:

Page 51

1        Q.   There is a letter in Mr. Romig's personnel
2    file dated March 27, 2008, from you confirming his
3    appointment as head softball coach for the 2007/2008
4    school year at a rate of pay of $3,073.90.
5            It says, "Please indicate receipt of this
6    letter by signing the attached copy and returning it to
7    the human resources office at your earliest
8    convenience."
9            I take it that's Mr. Romig's signature down at
10   the bottom left-hand corner?
11       A.   I assume so.
12       Q.   That's where it would be signed by the
13   applicant?
14       A.   Yes.
15       Q.   It says, "Also attached are some board
16   policies and regulations distributed to all employees.
17   Please read over this information and keep for your
18   files."
19           Is that the information we talked about before
20   about drug-free policy and harassment policy?
21       A.   Yes.
22       Q.   Are there any other policies that are given to
23   the employee besides those two?  Because we only have
24   acknowledgments for two.

Page 52

1        A.   At that time, then, we must have only done
2    those two.
3        Q.   There is another document headed "Quakertown
4    Community School District Extracurricular Activity."  Is
5    this the -- I'm sorry, "Extracurricular Application."  I
6    think I said "Activity."  It's "Extracurricular
7    Application."
8            Is this, for lack of a better term, formal
9    application for a position as a coach that Quakertown
10   used at the time?
11       A.   Yes.
12       Q.   That application has a space for the applicant
13   to provide information regarding prior coaching or
14   activity supervising experience, and Mr. Romig lists
15   Faith Christian Academy as a place where he coached
16   both baseball for five years and basketball for three
17   years.  If you look at paragraph three.
18       A.   Yes, I just saw it.
19       Q.   Okay.  At the time that this application was
20   made back in 2007, did Quakertown do anything to
21   contact former employers or organizations that hired
22   somebody such as Mr. Romig to be a coach to question
23   them about his performance of his job at a prior
24   location?

Page 53

1        A.   It is a required part of the process for
2    hiring, but I do not know for sure if it was done in
3    this particular case.
4        Q.   If it was at this time a required part of the
5    process, would the contact made by some representative
6    of Quakertown to some former employer of this applicant
7    be memorialized in some kind of writing?
8        A.   Not necessarily.
9        Q.   And who would be the person back in 2007 that
10   would have been responsible for making that contact for
11   a hire such as Mr. Romig?
12       A.   Either the athletic director or the high
13   school principal.
14       Q.   So, it would have been Mr. Babb or whoever the
15   principal was at that time?
16       A.   Yes.
17       Q.   Are they supposed to document that type of
18   background check?  I mean in writing, document it in
19   writing, to put in someone else's file.
20       A.   Not for coaching.
21       Q.   For teachers?
22       A.   Yes, that's generally documented.  Now it's
23   all electronic, so we don't have any paper any more.
24       Q.   Do you know whether or not Mr. Babb knew Mr.

14 (Pages 50 to 53)

Appendix1022
0ca949a8-0dd2-4802-ac61-587e81c81c46

Nancianne Edwards                                                                 Nace vs. FCA, et al.
                                    May 19, 2015

|  | Page 54 |
|---|---|

Page 54

1  Romig prior to hiring him or being part of the hiring
2  process for Mr. Romig's tenure at Quakertown?
3      A.   I don't know.
4      Q.   Do you know whether or not Mr. Babb had any
5  connection at all at the time he was working for
6  Quakertown with Faith Christian Academy?
7      A.   I don't know.
8      Q.   As a member or a coach or any affiliation at
9  all.
10     A.   I don't know.
11     Q.   There are also a number of criminal checks
12  that appear to have been completed and made part of Mr.
13  Romig's personnel file at the time, including one by
14  the Pennsylvania State Police, one by the Department of
15  Public Welfare, and one by -- looks like the FBI?
16          Was that the general practice back then for
17  employee checks before hiring?
18     A.   Yes, the three required clearances.  Yes.
19     Q.   I think you said those were the three
20  requirements?
21     A.   Those are the -- there are three clearances
22  required for school employment.
23     Q.   When you say "require," do you mean required
24  by law?

Page 55

1      A.   Yes.
2      Q.   Was there any reason back in 2007, 8 or 9
3  where you would not get these clearances from a
4  prospective employee?
5      A.   No.
6      Q.   It's mandatory.
7      A.   That is correct:  No one starts work without
8  them.
9      Q.   And the last document in the pack is a letter
10  from you dated November 12th, 2009 to Mr. Romig,
11  confirming his approval by the school district of his
12  position as head girls softball coach for the 2009/2010
13  school year.  That would have been for the third year
14  that he was coaching.  He's already completed 2008 and
15  2009 by that time.
16     A.   Yes, I believe that's what the record
17  reflects.
18     Q.   But since he turned in his resignation January
19  5th, 2010, he didn't coach at any part of that year,
20  2010.
21     A.   Correct.
22          MR. GROTH:  I have no further
23      questions.  Thank you very much.  Some of the
24      other attorneys may have questions for you.

Page 56

1          MR. SANTARONE:  I don't have any
2  questions.
3          MS. OLSZEWSKI:  No questions.
4          MR. FOX:  No questions.
5          MS. CONNOR:  No questions.
6          MR. GARTON:  No questions.
7          MR. GROTH:  The deposition is
8  completed.  Thank you very much.
9          THE WITNESS:  You're welcome.
10          MR. GROTH:  I appreciate it.
11          (The deposition was concluded at 4:30
12  p.m.)

Page 57

1          Notice of Deposition          10

Appendix1023

0ca949a8-0dd2-4802-ac61-587e81c81c46

Nancianne Edwards                                                    Nace vs. FCA, et al.
                            May 19, 2015

                                                          Page 58
              CERTIFICATION
              ------
         I, LANCE A. BRUSILOW, a Registered
Professional Reporter and Notary Public, hereby certify
that the foregoing is a true and accurate transcript of
the deposition of said witness who was first duly sworn
by me on the date and place herein before set forth.
         I FURTHER CERTIFY that I am neither
attorney nor counsel for, not related to nor employed
by any of the parties to the action in which this
deposition was taken; and further certify that I am not
a relative or employee of any attorney or counsel
employed in this action, nor am I financially
interested in this case.

         _____
         Lance A. Brusilow
         Registered Professional Reporter
         Certified Realtime Reporter


         The foregoing certification does not
apply to any reproduction of the same by any means
unless under the direct control and/or supervision of
the certifying shorthand reporter.

         ------

Appendix1024
0ca949a8-0dd2-4802-ac61-587e81c81c46

```
 1                      CERTIFICATION

 2

 3                        - - - - - -

 4

 5            I hereby certify that the testimony and

 6     the proceedings in the aforegoing matter are

 7     contained fully and accurately in the stenographic

 8     notes taken by me and that the copy is a true and

 9     correct transcript of the same.

10

11

12     LANCE A. BRUSILOW
       Certified Realtime Reporter
13     Registered Professional Reporter

14

15

16            The foregoing certification does not

17     apply to any reproduction of the same by any means

18     unless under the direct control and/or supervision of

19     the certifying shorthand reporter.

20

21                        - - - - - -

22

23

24
```

Nanci;anne Edwards

May 19, 2015

Nace vs. FCA, et al.

Page 1

**A**

abide 8:9
ability 7:24
about 4:21
  4:23 6:18
  9:4,4,9,14
  10:21
  12:10
  17:7 19:1
  22:20
  23:8 26:1
  27:10,16
  28:2 31:7
  33:6
  35:14,18
  36:9,20
  38:18
  39:4 41:6
  42:18
  43:13,20
  46:19
  47:15
  51:19,20
  52:23
above 1:13
abuse 4:17
  30:4
  39:24
  43:6
Academy
  2:17 19:1
  52:15
  54:6
accept
  35:23
accepted
  50:15
according
  12:22
  15:10
account
  27:9
accurate
  58:5
accusation
  37:15,24
  38:3,5
  39:6,21
  39:23
  41:3,6
accusations
  37:1
  44:12
acknowle...
  22:3,4
  25:21

acknowle...
  26:9,20
acknowle...
  22:19
  22:23
acknowle...
  22:15
  26:23
acknowle...
  22:7
  51:24
action 1:4
  58:10,13
activities
  5:13
  27:12
  30:10
  43:3 45:3
  45:4
activity
  23:3
  40:22
  42:11
  52:4,6,14
actual
  35:19
  46:16
actually
  14:4
  24:17
  25:14
  26:14,18
  27:3
  32:20
  39:16
  50:2
addition
  33:23
additional
  29:15
  50:18
address
  17:2 26:4
addressing
  41:17
administr...
  34:4 40:2
affiliation
  54:8
after 5:2
  16:20
  17:11
  18:13
  20:7
  22:16

29:22
34:21
40:10
46:24
49:20
afternoon
  4:10
afterwards
  35:20
again 17:20
  32:8
  47:10
  29:5 38:3
  40:18
ago 28:4
agreed 4:1
ahead 8:10
al 1:4,6
Alicia
  30:13
  31:2,6
  44:13
allegation
  38:3,5,7
  38:21
  39:20,24
  40:18
  41:3,6
  42:17
allegations
  37:1
alleged
  38:12
allow 8:3
already
  20:23
  42:12
  44:4
  55:14
among 4:1
amount
  46:22
and/or
  13:13
  36:17
  37:3
  44:14
  58:21
Anita 36:10
another
  18:24
  20:7

29:10
46:22
47:8 50:2
52:3
answer
  6:21 7:1
  7:2,7,9,14
  7:16,18
  8:4,5,9,10
  9:6,12,13
  9:15
answers
  7:12
  42:12
anybody
  13:22
  27:13
  33:4
anything
  4:21 19:8
  19:10
  21:11
  22:3
  26:13,17
  27:21
  43:8,10
  44:18
  48:11,24
  50:14
  52:20
appear
  54:12
APPEAR...
  2:1 3:3
applicant
  51:13
  52:12
  53:6
application
  16:14
  45:12
  52:5,7,9
  52:12,19
  53:6
applicati...
  14:7
apply 58:20
appointm...
  47:2 51:3
appreciate
  56:10
appropri...
  38:20
approval
  25:8
  46:24
  55:11

approve
  50:20,21
approved
  1:15 25:5
  47:1
  48:19
approves
  46:3
approxim...
  32:4
April 5:7
  10:5
  22:14
archived
  33:14
archives
  33:24
arrangem...
  9:20
arrested
  32:9
asked 5:1
  17:8 19:4
asking 5:15
  7:8 16:22
  33:5
aspects
  11:17
assistant
  11:2
  12:23
  29:4,21
  46:2
  47:22,24
associated
  45:11
  28:15
associates
  1:18
assume 7:3
  21:17
  32:2
  42:13
  48:3
  51:11
asterisk
  46:9
athlete
  26:2,12
  26:24
  27:8,9,10
  27:18
  28:20
  30:11
  32:5,14
  32:16,17
  32:18,21
  40:8

31:17
34:12
36:2
43:15,18
45:14,18
53:12
attached
  5:24 10:6
  10:12
  34:8
  36:13
  51:6,15
attempt
  34:9
attempted
  42:9
attempting
  44:17
attempts
  34:21
  37:8
attended
  30:13
attention
  30:7
attorney
  7:24 8:1
  8:8 9:19
  29:4,21
  29:22
  58:9,12
attorneys
  8:7 36:22
  55:24
Attorney's
  27:14
  28:15
authoriza...
  46:1
  49:19
authorized
  50:1
available
  9:2
aware 19:3
  22:10
  26:2,12
  26:24
  27:8,9,10
  27:18
  28:20
  30:11
  32:5,14
  32:16,17
  32:18,21
  40:8

42:15,23
44:5
awfully
  33:8
a.m 20:15

**B**

Babb 15:18
  15:24
  16:17
  17:11,13
  20:6,6
  34:9,10
  34:16
  36:1
  43:17,19
  53:14,24
  54:4
back 4:19
  5:4,7 7:5
  9:14,21
  11:23
  21:16
  25:9,18
  38:2,4
  39:19
  40:17
  41:23
  45:14
  52:20
  53:9
  54:16
  55:2
backgrou...
  53:18
bargaining
  38:14
baseball
  52:16
based 5:6
  30:3
  44:16
basically
  23:2
  36:21
  40:1
basis 12:5
basketball
  52:16
became
  32:5,16
  32:17
become
  before 1:13
  6:2,4,21

7:1,6,8,15
7:16
20:18
21:2 25:6
28:2,10
30:8
33:22
39:10,12
39:17,22
50:6,15
51:19
54:17
58:7
began 21:4
begin 7:6,9
  7:15,16
  48:24
BEGLEY
  1:11 2:8
behavior
  37:2,4
  41:18
  42:4,18
  43:21
being 47:11
  49:21
  54:1
believe 12:6
  16:7 18:1
  20:10,23
  21:9 31:1
  32:22
  34:10
  35:19
  38:19
  40:7
  46:18
  49:2,7,9
  50:17
  55:16
bell 29:6,11
belong
  45:22
benefits
  11:20
besides
  51:23
best 7:4,24
Beth 12:24
better 52:8
between
  11:23
  15:10

16:3
17:12,19
21:10
34:3 43:3
44:13
beyond
  18:20
  26:22
  27:1
  33:23
bit 9:5
board 46:1
  46:3,24
  47:1
  48:20
  50:20
  51:15
both 40:5,6
  40:7
  46:20
  52:16
bottom
  46:9 47:9
  51:10
Boulevard
  1:11 2:9
Box 2:20
break 9:18
  9:20
briefly
  11:14
brought
  39:20
brusilow
  1:14,18
  58:3,15
Bucks 25:1
  25:2
  27:14,14
  28:16
  29:10,21
  29:22
  30:8 31:6
bulk 34:12

**C**

call 14:24
called
  14:24
  25:14
came 43:19
capacity
  11:8
  30:17
CARLA
  3:8

Appendix1026

Nancianne Edwards

Nace vs. FCA, et al.

May 19, 2015

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **CARLIN** | clearances | 24:17 | confirm | 42:9 | co-curric... | 22:13 | 25:1 | 21:22 |
| 1:11 2:8 | 54:18,21 | Commerce | 49:24 | copies | 45:9 | 25:6 | Diane 13:1 | 22:8 |
| case 4:22 | 55:3 | 33:21 | confirming | 14:22 | Cranmer | 31:17 | different | 27:14 |
| 6:4,19 | client's | committed | 47:1 | copy 10:4 | 13:1 | 41:16 | 36:7 | 28:15 |
| 8:24 28:3 | 6:19 | 23:5 | 49:20 | 10:13 | criminal | 42:2,3 | direct 18:6 | 29:4,21 |
| 28:11 | closely 6:20 | 38:13 | 51:2 | 16:23 | 27:11 | 54:14 | 20:3 | 29:21 |
| 29:5,9 | Clymer | communi... | 55:11 | 22:11,15 | 32:5 | depending | 35:16 | 48:17,20 |
| 53:3 | 3:14,24 | 16:24 | connection | 23:12,17 | 54:11 | 46:13 | 58:21 | 49:16 |
| 58:14 | coach 4:24 | communi... | 4:17 6:7 | 26:12,24 | current | deposition | directed | 52:4 |
| **CASSIDY** | 5:3 12:16 | 18:4,6 | 6:9 54:5 | 51:6 | 30:16 | 1:10 5:10 | 28:21 | 55:11 |
| 3:7 | 13:9 15:8 | Communi... | **CONNOR** | corner | currently | 5:15 6:1 | 37:12 | districts |
| cconnor... | 15:10 | 2:11 5:17 | 3:7,8 | 51:10 | 4:12 | 6:3,15 | 40:1 | 25:2 |
| 3:13 | 20:9 33:7 | 5:23 9:1 | 56:5 | correct | 13:10 | 8:17,19 | direction | **DIVISION** |
| certain 8:6 | 37:15 | 10:16,23 | consists | 5:17,19 | 25:7 | 9:21 10:5 | 14:22 | 1:2 |
| 46:21,21 | 43:21 | 11:5,24 | 23:3 24:8 | 5:20,21 | customar... | 10:6,7,10 | directly | document |
| 46:22 | 45:16 | 22:8 | consult | 11:13 | 15:6 | 10:17 | 37:6 40:3 | 15:5,5 |
| certificati... | 46:6,10 | 48:16,19 | 26:4 | 12:9,13 | customary | 17:3 | 40:10 | 20:18,18 |
| 4:2 58:1 | 46:17 | 49:16 | contact | 12:17 | 50:18 | 19:18 | director | 22:16 |
| 58:19 | 47:11 | 52:4 | 18:1 | 13:19,20 | | 34:9 | 11:9,15 | 46:20 |
| **Certified** | 49:5,21 | complain... | 19:11,12 | 14:19 | **D** | 36:11 | 14:15 | 47:8,17 |
| 58:16 | 51:3 52:9 | 38:9 | 29:19 | 16:1 | DA 32:24 | 42:7 44:5 | 17:10,14 | 48:3,12 |
| certify 58:4 | 52:22 | complaint | 34:9,15 | 17:18 | database | 56:7,11 | 20:4,21 | 49:15 |
| 58:8,11 | 54:8 | 37:14,24 | 35:16,16 | 25:10,11 | 33:11 | 57:1 58:6 | 20:24 | 50:2 52:3 |
| certifying | 55:12,19 | 38:10 | 37:5 | 28:3 | date 1:13 | 58:11 | 21:5 | 53:17,18 |
| 58:22 | coached | 39:16 | 39:13 | 32:19 | 5:11 21:4 | depositions | 34:12 | 55:9 |
| chance | 31:14 | 42:17 | 41:4 42:1 | 36:19 | 22:14 | 6:5 | 36:2 | document... |
| 20:17 | 43:13 | 43:7 | 52:21 | 35:20 | 35:20 | describe | 43:15,18 | 53:22 |
| **Change** | 52:15 | complaints | 53:5,10 | 42:16,20 | 46:21,22 | 11:14 | 45:15,18 | document... |
| 49:16 | coaches | 37:1,11 | contacted | 47:12 | 58:7 | 17:20 | 53:12 | 38:9 |
| changed | 12:1,2,24 | 41:17 | 31:6 | 55:7,21 | dated 10:5 | 45:6 | Directors | documents |
| 39:8 40:8 | 49:6 | 43:2,20 | contained | correctly | 20:14 | designate | 48:20 | 5:6,8 |
| check 53:18 | coaching | complete | 36:21 | 39:11 | 48:15,17 | 8:18 | director's | 12:23 |
| checked | 18:24 | 7:6,14,16 | contains | 46:8 | 51:2 | designated | 15:15 | 13:22 |
| 33:10 | 43:3 49:3 | completed | 32:3 | counsel 2:6 | 55:10 | 8:24 | discipline | 14:10 |
| checks | 52:13 | 54:12 | Continuing | 2:11,17 | daughter | 10:16 | 38:20 | 15:10 |
| 54:11,17 | 53:20 | 55:14 | 5:23 | 2:23 3:14 | 4:19 | designee | discuss | 16:10,20 |
| Cherrybon | 55:14 | 56:8 | contract | 3:24 4:2 | David 2:3 | 5:16 | 10:9,17 | 20:13 |
| 13:1,6 | coach's | completion | 46:16,19 | 8:3 58:9 | 4:10 | detach | 31:2 | 22:23 |
| Child 23:19 | 37:16 | 41:2 | control | 58:12 | 15:18 | 22:12 | discussed | 29:3,23 |
| ChildLine | coerce | compliance | 21:1 | county 25:1 | 17:11 | details | 10:7,12 | 44:21,24 |
| 38:22 | 42:10 | 39:2 | 58:21 | 25:2 | 29:10 | 18:10 | 13:11 | 47:9 |
| 39:5,13 | **COLEM...** | concerning | **CONT'D** | 27:14,15 | 34:10 | 44:6 | 19:17 | doing 15:12 |
| 40:3,10 | 2:13 | 5:2 44:6 | 3:3 | 28:16,16 | david@h... | detective | 36:15,24 | 26:7 |
| 40:24 | collect | concerns | convenie... | 29:10,21 | 2:5 | 27:18 | 42:7 | 35:13 |
| 41:12,13 | 34:21 | 43:1,13 | 51:8 | 29:22 | day 17:16 | 29:10 | discussion | dollars 35:3 |
| 41:18 | collection | 43:20 | conversat... | 30:8 31:6 | 34:21 | detectives | 34:3 | 46:23 |
| Christian | 35:10 | concluded | 17:21 | 32:24 | 49:19 | 27:15 | distributed | done 12:15 |
| 2:17 19:1 | college 50:5 | 56:11 | 18:6,17 | couple 6:13 | days 48:17 | determini... | 51:16 | 24:3,5 |
| 52:15 | combinat... | conclusion | conversat... | 34:17 | December | 28:16 | district 1:1 | 25:13 |
| 54:6 | 45:17 | 38:18 | 17:21 | 35:8 | 39:8,22 | 38:15,19 | 1:1,6,16 | 26:17 |
| chronolo... | come 9:21 | conduct | court 1:16 | court 1:16 | 40:10 | 39:12 | 2:11,23 | 33:7 52:1 |
| 17:15 | 18:23 | 37:16 | 19:16,19 | 2:20 4:12 | defendants | detective's | 4:12 5:17 | 53:2 |
| civil 1:2,4 | 27:15 | conducting | 19:22 | 7:9,20 | 2:24 | 28:16 | 5:24 6:8 | down 7:10 |
| 6:4,6 | 30:7 | 38:8 | 35:18 | coworker | **DENNE...** | determini... | 9:1 10:16 | 36:12 |
| claims 4:15 | 42:23 | conference | conveyed | 43:8 | 2:13 | 38:15,19 | 10:23 | 46:9 51:9 |
| clarify 6:24 | comes | 24:18 | 12:11 | COX 2:19 | department | 39:12 | 11:6,24 | Doylestown |
| | | | convince | | | developed | | |

Appendix1027

215.772.1717

Nancianne Edwards

Nace vs. FCA, et al.

May 19, 2015

Page 3

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2:21 | 50:5,11 | employm... | 15:13,14 | 28:21 | 40:18 | 43:24 | 50:15 | 22:1,2,22 |
| Drive 33:21 | emailed | 5:13 | evaluations | expect 6:14 | 42:10 | 52:16 | 51:2 55:3 | 23:4,17 |
| drug 21:23 | 50:3 | 13:13,13 | 11:21 | expecting | 44:14 | follow 27:5 | 55:10 | 24:8 |
| drug-free | employed | 13:18,24 | 12:1,14 | 25:2 | file 14:2,8 | followed | front 23:11 | 25:14 |
| 21:23 | 5:14 | 14:8,17 | 13:13 | experience | 14:10,22 | 33:15 | fully 7:23 | 26:15,19 |
| 22:15 | 10:22 | 17:9,22 | 14:6 15:3 | 52:14 | 14:22,24 | 35:20 | further | 36:1 |
| 51:20 | 11:5 13:2 | 19:6,20 | 19:9 36:1 | experienc... | 15:1,2,6 | following | 50:14 | 42:13 |
| due 18:2 | 13:18 | 27:16,20 | 36:17 | 44:1 | 16:8,11 | 34:18 | 55:22 | 51:22 |
| duly 4:7 | 19:7 20:2 | 30:10 | even 9:2,3 | experienc... | 16:13,23 | follows 4:7 | 58:8,11 | gives 49:17 |
| 58:6 | 21:11 | 32:6 33:2 | 41:3 | 44:8 | 20:19 | follow-up | _____ | giving 7:4 |
| during 10:7 | 30:5,24 | 34:1,5 | 42:21 | explained | 22:5,6 | 27:2 | G | 18:8 |
| 11:16 | 43:15 | 36:1,8,16 | events 7:4 | 25:15 | 28:6,8,9 | foregoing | gap 17:12 | 24:11 |
| 15:8 | 46:21 | 36:16 | eventually | explanati... | 28:11,21 | 58:5,19 | Garton 2:8 | Gloria |
| 19:14 | 58:9,13 | 37:13 | 15:24 | 7:19 | 29:17 | form 4:4 | 5:6,15,21 | 47:18,21 |
| 21:20 | employee | 43:13 | ever 6:3 | explicit | 33:5,13 | 15:4 | 8:4 10:14 | go 6:2,11 |
| 31:14 | 5:16 | 44:2 | 13:17,23 | 41:7 | 33:24 | 28:23 | 10:18 | 6:13,16 |
| 34:12 | 11:20,21 | 46:17 | 18:5 | 42:11 | 34:2 | 42:10 | 12:23 | 8:10 |
| 36:2 | 12:1 15:3 | 54:22 | 19:13 | extent 18:3 | 37:18,20 | 49:16 | 14:4,23 | 15:24 |
| 37:12 | 15:19 | employm... | 20:11 | extracurr... | 37:22,23 | formal 12:6 | 16:12,24 | 16:3,20 |
| 44:2 | 21:19 | 43:7 | 21:9 26:7 | 45:3,4 | 37:23 | 12:7,14 | 36:22 | 24:21 |
| duties | 22:22 | encompas... | 27:2 30:1 | 47:7 52:4 | 48:13 | 13:17 | 50:22 | 36:12 |
| 11:14 | 23:17 | 23:2 | 30:7 31:2 | 52:5,6 | 51:2 | 15:3,13 | 56:6 | 42:6,18 |
| _____ | 26:11,14 | end 11:23 | 31:5 | extra-duty | 53:19 | 24:3 52:8 | gave 18:9 | 49:23 |
| E | 26:15 | 21:6 | 34:23,24 | 45:8 | 54:13 | former | 44:3 | GOGGIN |
| E 3:8 | 27:2 | 49:13 | 35:5,10 | _____ | files 28:22 | 30:9 | general | 2:13 |
| each 7:13 | 30:16 | engage | 42:1,15 | F | 51:18 | 52:21 | 16:21 | going 5:4 |
| earliest | 32:19 | 40:21 | 43:10 | fact 8:17 | filing 4:3 | 53:6 | 54:16 | 6:11,17 |
| 51:7 | 33:12,13 | 42:10 | 48:11 | 20:21 | fill 45:10 | forth 58:7 | generally | 7:5 8:10 |
| East 2:20 | 38:3,15 | engaged | every 7:23 | 28:14 | final 34:20 | forward | 23:7 | 8:14 9:14 |
| 3:9,20 | 38:20 | 30:4 | 22:22 | 33:11 | 45:22 | 5:7 | 27:10 | 26:22 |
| EASTBU... | 39:20,23 | enough 5:7 | 24:9 | facts 5:2 | 49:11 | forwarded | 31:23 | Good 4:10 |
| 2:19 | 40:1,3,19 | entice 42:9 | 31:20 | 6:18 7:4 | 50:12 | 48:5 | 32:14 | grade 30:19 |
| Eastern 1:1 | 40:22 | entitled | everyone | 8:15 9:9 | financially | forwarding | 38:6 45:6 | 30:19 |
| 4:12 | 41:1,8 | 49:15 | 40:13 | 9:9,10 | 58:13 | 48:3 | 45:18 | grade-de... |
| Education | 44:8 | Eric 4:15 | exactly | 42:8,14 | find 14:5 | founded | 49:5 | 30:22 |
| 25:6 42:3 | 49:17 | 13:12 | 4:23 7:8 | 44:3,11 | 16:9 31:5 | 39:1 | 53:22 | GRAY 2:19 |
| Edwards | 51:23 | 17:9 | 25:15 | 44:19 | 43:10 | four 43:1 | gestures | GRIMES |
| 1:10 4:6 | 54:17 | 20:14 | 32:15 | failure | 44:17,18 | 49:8 | 7:21 | 3:18 |
| 4:10 | 55:4 | 36:15 | 38:11 | 35:14 | finish 9:21 | FOX 56:4 | gets 45:20 | Groth 2:3 |
| effect 30:2 | 58:12 | 37:1 42:8 | EXAMIN... | fairly 6:10 | firing 11:18 | from 8:16 | 45:21 | 4:9,11 |
| either 7:18 | employees | 43:2 44:1 | 4:8 | Faith 2:17 | first 4:6 6:3 | 8:22 9:2 | 49:6 | 5:19,22 |
| 18:7 | 17:1 | 44:13 | examined | 19:1 | 6:19 | 18:15 | girls 15:9 | 10:3,19 |
| 53:12 | 19:19 | 47:10 | 4:7 | 52:15 | 10:22 | 20:14 | 21:12,15 | 10:20 |
| electronic | 22:2 24:8 | 49:17 | example | 54:6 | 19:5 23:9 | 27:13,24 | 31:13 | 15:23 |
| 10:13 | 25:13 | 50:4 | 12:16 | familiar | 30:19 | 28:15 | 46:6,11 | 50:23,24 |
| 24:20,21 | 29:20 | ESQUIRE | 40:9 | 6:10 | 32:4,21 | 31:5 | 47:11 | 55:22 |
| 53:23 | 41:19 | 2:3,8,14 | except 4:3 | 23:19,22 | 32:22 | 32:23 | 49:22 | 56:7,10 |
| Elizabeth | 45:1 | 2:19 3:8 | exchanged | 24:4 | 35:9 | 33:24 | 55:12 | group 47:8 |
| 4:17,24 | 46:24 | 3:19 | 37:7 | 30:12 | 36:15 | 37:15 | give 6:21 | guess 50:8 |
| 27:12 | 51:16 | established | exhibit 5:9 | FBI 54:1 | 44:24 | 41:1 | 7:1,2,17 | 50:19 |
| 29:5 | employee's | 37:24 | 10:1,4,10 | FCA 3:14 | 45:6 | 42:12 | 20:17 | guide 45:8 |
| else's 53:19 | 42:3 | et 1:4,6 | 10:11 | felonies | 47:21 | 46:1,21 | 32:8 45:1 | guilty 4:16 |
| email 15:4 | employer | evaluated | 13:12 | 4:16 | 58:6 | 45:2 46:7 | 45:2 46:7 | 32:10 |
| 18:15 | 53:6 | 12:4 36:4 | 20:12 | female 37:4 | firsthand | 48:2,3,6 | given 6:3,5 | _____ |
| 20:14 | employers | evaluation | 36:14 | 37:7,15 | 38:16 | 48:12,16 | 13:23 | H |
| 48:3,6 | 52:21 | 13:18,24 | existed | 38:4 | 48:2,3,6 | 50:4,12 | 21:21 | half 32:11 |

Nancianne Edwards

Nace vs. FCA, et al.

May 19, 2015

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 44:24 | 21:2,9 | 23:23 | 15:13 | 27:11 | 35:17 | 35:1 42:5 | **left-hand** | **long** 6:15 |
| **handle** 12:1 | 26:7 35:8 | 47:22 | informati... | 30:3 | 36:12 | 44:22,23 | 51:10 | 11:3 |
| **handled** | 35:14,16 | 51:7 | 5:12 8:15 | 38:24 | 37:16 | 48:11,23 | **let** 6:2,13 | 24:24 |
| 29:4 | 35:16,17 | | 8:23 9:2 | 39:12,18 | 38:5 39:4 | 50:6,12 | 7:6,14,15 | 30:24 |
| **handout** | 35:18 | **I** | 9:8 10:21 | 41:2 | 39:17 | 50:14 | 9:19 | 33:8 |
| 26:3 | 36:4 | **idea** 50:7,8 | 12:21 | investigat... | 43:5 | 53:2,24 | 10:10,21 | **longer** |
| **harassment** | 37:16 | **identifica...** | 17:2,8 | 40:15 | 44:21 | 54:3,4,7 | 36:12 | 43:15 |
| 21:22 | 48:12 | 10:2 | 18:14 | **involved** | 45:5,6 | 54:10 | 39:4 45:5 | **look** 13:22 |
| 22:11 | 49:23 | **immediate** | 29:15 | 45:3 | 48:4 | **knowledge** | 50:12 | 16:10,22 |
| 23:1,8,9 | 50:15 | 39:5 | 30:1 | **involving** | 52:18 | 8:22 9:3 | **letter** 15:5 | 20:17 |
| 25:15,16 | 54:1 | **immediat...** | 32:12 | 4:15 | | 12:12 | 18:14 | 33:5 |
| 26:10 | **hire** 16:7 | 17:11 | 34:7 | **issue** 6:8 | **K** | 13:16 | 47:1 48:9 | 44:21 |
| 30:5 43:6 | 24:11 | 38:23 | 36:20 | 44:6 | **Kalazs** 17:6 | 18:4,20 | 48:16 | 45:5 |
| 51:20 | 45:15 | **important** | 37:9 | **issues** 6:18 | 17:13,22 | 19:6 | 49:20 | 52:17 |
| **hard** 7:12 | 53:11 | 6:18 22:8 | 39:15 | 8:19 17:7 | 18:22 | 29:18 | 51:1,6 | **looked** 26:9 |
| **Harner** | **hired** 16:6 | **inapprop...** | 42:8,14 | 18:8 26:4 | 19:17 | 38:17 | 55:9 | 32:2 |
| 20:1 | 21:19,20 | 37:4,5 | 42:22 | 36:20 | 20:8,10 | 40:13,14 | **letters** 35:8 | **looking** |
| **having** 4:6 | 22:1 | 40:19 | 43:24 | 43:2,19 | 20:14 | 41:22,24 | 35:14,17 | 8:14 |
| **head** 7:19 | 34:11 | 42:11 | 44:11,17 | 44:1,7 | 47:17 | 49:1 | 47:3 | 20:12 |
| 26:4 | 45:21 | 44:12 | 50:18 | **Item** 36:24 | 48:4,5 | **known** 9:13 | **Let's** 42:6 | 44:22,23 |
| 40:23 | 46:10 | **include** | 51:17,19 | **IU** 25:1 | 50:4,11 | | **level** 38:20 | **looks** 45:2 |
| 46:6 50:8 | 47:11 | 11:21 | 52:13 | | **keep** 15:20 | **L** | **like** 27:21 | 48:2,5 |
| 51:3 | 52:21 | 23:9 | **informs** | **J** | 23:17 | **labor** 11:19 | 30:19 | 54:15 |
| 55:12 | **hiring** | 24:11 | 20:15 | **J** 2:14 | 51:17 | **lack** 52:8 | 33:9 | **Lower-le...** |
| **headed** | 11:18 | **included** | **initial** | **JAMES** 1:4 | **KELLY** | **lady** 4:18 | 43:14 | 43:13 |
| 52:3 | 13:12 | 14:1,11 | 39:12,15 | **January** | 3:18 | **Lance** 1:13 | 45:3 48:2 | |
| **health** 18:3 | 16:15,18 | **including** | **inquiries** | 5:5 20:14 | **Kemmerer** | 58:3,15 | 48:5,9 | **M** |
| 18:7,11 | 19:9 | 12:24 | 27:19 | 32:10 | 29:10 | **Langhorne** | 49:14 | **M** 2:19 |
| 44:1,6,7 | 24:14 | 25:16 | 35:5,7 | 47:18 | **kept** 15:6 | 1:12 2:10 | 54:15 | **made** 14:22 |
| **held** 1:10 | 36:16 | 37:2 | **instructed** | 48:15,17 | 33:18 | **language** | **likely** 16:8 | 22:10 |
| 11:3 | 46:3 53:2 | 54:13 | 8:8 | 48:21 | **kind** 5:7 | 37:6 | 26:6 | 26:2,11 |
| **help** 6:14 | 54:1,1,17 | **inclusive** | **instruction** | 50:4 | 18:15 | **last** 6:15 | **limited** 37:3 | 26:23 |
| **helpful** | **history** | 43:4 | 8:9 | 55:18 | 23:3 32:8 | 34:15,21 | 43:5 | 28:3 |
| 6:16 | 5:13 19:6 | **indicate** | **instructio...** | **JEFFREY** | 35:9 | 44:10 | **line** 32:9 | 29:19 |
| **her** 17:7,8 | 27:16,20 | 13:23 | 6:16 9:22 | 2:8 | 40:21 | 47:5 49:9 | **list** 10:6,12 | 34:21 |
| 18:1,2,3 | 33:2 34:1 | 20:20 | **instructs** | **Jennifer** | 53:7 | 55:9 | 31:12 | 38:3,3,22 |
| 18:15 | 34:5 | 31:18 | 8:5 | 29:6 | **knew** 16:17 | 54:24 | 36:12 | 38:23 |
| 19:1 | **hold** 17:16 | 51:5 | **interest** | jgarton@... | 53:24 | **later** 48:18 | 45:9 | 40:18 |
| 20:15 | **Hollenbach** | **indicates** | 50:19 | 2:11 | **know** 7:8 | 49:8 | **listed** 8:19 | 41:7,8,18 |
| 30:15 | 3:14,24 | 26:21 | **interested** | jjsantaro... | 8:15 9:16 | **law** 23:20 | 13:11 | 42:15,17 |
| 31:1,7 | **HORNST...** | **indicating** | 58:14 | 2:16 | 9:8,11,19 | 24:2,4 | 17:2 42:7 | 45:13,15 |
| **high** 5:3,14 | 2:2,2 | 18:15 | **internal** | **job** 14:7 | 12:3,4,14 | 25:7 39:2 | 50:5 | 52:20 |
| 12:16 | **hours** 24:9 | 42:8 | 33:1,24 | 37:2 48:6 | 12:18,19 | 40:8 | **listen** 6:20 | 53:5 |
| 15:9 | **HR** 26:3 | **indication** | 49:24 | 52:23 | 12:20,21 | 54:24 | **lists** 46:5 | 54:12 |
| 27:13 | 40:23 | 46:10 | **interview** | **JOSEPH** | 13:10 | **lawsuit** | 52:14 | **make** 6:19 |
| 31:13 | **Hrabina** | **individual** | 38:8 | 2:14 | 15:11 | 4:11 | **litigation** | 6:20 7:20 |
| 36:5,11 | 47:18,21 | 2:23 4:15 | **interview...** | **July** 11:4 | 16:4,5,17 | **learned** | 4:14 | 8:7 9:19 |
| 46:6 | 48:6 | 12:20 | 30:8 | 11:12 | 16:19 | 8:16 | **little** 9:5 | 26:14,17 |
| 53:12 | **Hughes** | **individuals** | **interview...** | **just** 6:13 | 18:5,13 | 39:23 | 10:21 | 37:8 |
| **him** 5:15 | 30:13 | 36:8 | 38:12,13 | 8:2 9:13 | 18:16 | **learning** | **LLP** 1:11 | 38:24 |
| 18:1,1,4,4 | 31:3,6 | **induce** | 38:17 | 10:21 | 21:18 | 5:3 32:12 | 2:8 | 39:15 |
| 18:6,6,15 | 44:14 | 40:21 | **investigate** | 11:14 | 28:9,14 | **least** 38:24 | **local** 4:22 | 44:23 |
| 18:17 | **human** 11:9 | 42:9 | 38:5 40:2 | 18:21 | 29:14,19 | 39:14 | **located** | **making** |
| 19:10,11 | 11:15,17 | **informal** | investigat... | 22:20 | 30:15 | **left** 15:24 | 14:21 | 7:11 |
| 19:12,13 | 14:9,16 | 12:10,14 | 29:9 | 26:9,10 | 31:15,19 | 17:11,13 | **location** | 27:19 |
| 20:11 | 22:12 | 13:18 | investigat... | 32:8 | 32:3 33:6 | 20:7 | 52:24 | 39:1 |

Nancianne Edwards

May 19, 2015

Nace vs. FCA, et al.

Page 5

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 53:10 | medium | 29:6 | 34:9 35:9 | okay 6:7 | 24:19 | 53:23 | 47:3 | photos |
| male 40:18 | 32:15 | Naces 4:11 | 35:9 | 8:14 9:18 | 25:12 | paragraph | person | 31:24,24 |
| Mall 1:12 | meet 25:6 | Nace's 4:18 | 36:13 | 10:19 | 28:1 | 52:17 | 10:14,15 | 37:6 |
| 2:9 | meeting | 4:24 | 42:7 50:6 | 17:20 | 29:16 | parent 43:8 | 14:3,4 | physical |
| managem... | 48:20 | name 4:10 | 57:1 | 19:4 21:8 | 31:17 | part 5:10 | 15:12 | 37:5 41:4 |
| 11:20 | member | 4:18 5:18 | notification | 22:18 | 32:24 | 8:17,21 | 16:6 | pictures |
| manager | 54:8 | 5:20 29:6 | 22:9 | 26:1 28:1 | 33:4 34:3 | 34:7 47:5 | 17:16 | 31:23 |
| 14:9,14 | members | 37:20 | 33:16 | 42:6,21 | 37:23 | 53:1,4 | 18:7 26:3 | PIETRA... |
| 14:15 | 31:13,18 | 49:17 | 41:11 | 45:24 | 38:16 | 54:1,12 | 28:5 | 3:18 |
| mandatory | 32:1 | named 4:15 | notified | 46:4 48:8 | 42:13 | 55:19 | 34:10,11 | PITCHF... |
| 55:6 | memo 48:8 | 29:11 | 18:2 | 50:2,23 | 44:3,6,7 | particular | 37:11 | 3:7 |
| MANDIO | 50:3 | 30:13 | notifying | 52:19 | 44:14 | 44:17 | 38:12,13 | place 4:19 |
| 1:11 2:8 | memorial... | names | 19:21 | OLSZE... | 45:16 | 45:16 | 41:15,20 | 16:3 21:3 |
| March 51:2 | 53:7 | 29:11 | 39:5 | 3:19 | 53:3 | 53:3 | 42:2 53:9 | 24:24 |
| marked 5:9 | memory | 38:15 | 48:18 | 15:20 | others 8:16 | parties | personal | 40:16 |
| 10:1,4 | 23:5 | 45:1,2 | November | 56:3 | otherwise | 46:20 | 8:22 9:3 | 48:23 |
| 36:13 | met 18:1 | NANCIA... | 55:10 | once 24:9 | 6:6 | 58:10 | 12:12 | 52:15 |
| Market | method | 1:10 4:6 | number | 33:15 | out 8:22,23 | party 8:23 | 13:16 | 58:7 |
| 2:14 | 12:11 | narrative | 4:16 5:9 | one 6:9 7:7 | 14:5 22:1 | pay 45:11 | 19:5,11 | placement |
| MARSH... | Middleto... | 7:18 | 7:7,9 | 7:10 10:4 | 31:5 33:4 | 46:12,14 | 19:12 | 45:8 |
| 2:13 | 1:11 2:9 | nature | 12:22 | 10:11 | 43:10 | 46:22 | 35:15 | Plaintiffs |
| material | might | 19:10 | 36:14,24 | 13:11,12 | over 6:16 | 49:16 | 44:13 | 2:6 |
| 22:22 | 12:19 | 40:20 | 43:1,24 | 16:9,16 | 7:13 | 51:4 | 49:1 | players |
| 23:1,3 | 38:16 | 43:8 | 44:10 | 22:7 27:1 | 14:20 | paying | personally | 43:22 |
| 26:15,18 | Mike 13:1 | necessarily | 54:11 | 33:22 | 16:11 | 19:10 | 8:15 9:12 | pleaded |
| materials | 13:6 | 53:8 | | 36:14 | 21:2 | payment | 27:18 | 4:16 |
| 21:21 | misconduct | need 9:18 | **O** | 41:19 | 29:14 | 49:11 | 28:8 | please 7:15 |
| 25:20 | 38:8,13 | 9:20 | objection | 46:12,14 | 35:10 | pays 49:7 | 42:15 | 7:23 9:7 |
| math 13:8 | 38:17 | 50:12 | 8:2,3 | 49:9 | 36:8 | PELLONI | personnel | 9:19 |
| matter 4:14 | missed 47:5 | needed | objections | 54:13,14 | 51:17 | 2:2 | 14:2,10 | 22:12 |
| matters | module | 39:16 | 4:3 8:6 | 54:15 | overpaid | pending | 15:2,6 | 51:5,17 |
| 10:8 | 24:7,16 | neither | objects | 55:7 | 34:20 | 4:12 41:2 | 16:8,11 | pled 32:10 |
| may 1:8 5:9 | 24:20 | 58:8 | 7:24 8:1 | ones 13:5 | 35:15 | Pennridge | 16:23 | point 27:11 |
| 6:15 8:6 | 25:1,10 | never 32:2 | obligated | only 7:10 | overpay... | 1:6 2:23 | 22:4 | 49:3 |
| 8:7,15,16 | momenta... | new 7:15 | 9:7 | 8:21 18:1 | 35:19 | 2:24 16:1 | 27:20,24 | 50:19 |
| 9:12 10:8 | 25:3 | 21:19 | obligation | 51:23 | overseeing | 16:4 27:7 | 28:6 | Police |
| 17:15 | money 35:1 | 24:11 | 8:21 | 52:1 | 23:23 | 27:13 | 29:16 | 54:14 |
| 30:4 33:6 | months | 31:9 | 25:23 | opportun... | own 8:8 | 32:6 | 33:5,13 | policies |
| 33:6 | 34:17 | 49:21 | obtain | 16:10 | 42:12 | 35:24 | 33:23 | 22:2 |
| 36:11 | more 16:21 | news 27:9 | 16:23 | opposed | Oxford | Pennsylv... | 34:2 | 23:13 |
| 44:7 | 48:12 | newspape... | 37:8 | 40:2 | 1:12 2:9 | 1:1,12 | 36:21 | 26:2 |
| 49:10,11 | most 15:18 | 4:22 | occurred | Oral 1:10 | | 25:5 | 37:22 | 51:16,22 |
| 55:24 | 16:8 26:6 | next 17:14 | 32:14 | order 17:1 | **P** | 54:14 | 51:1 | policy |
| maybe | much 35:1 | 17:16,16 | 38:19 | organizat... | P 2:8 | people 7:13 | 54:13 | 21:21,23 |
| 10:14 | 55:23 | 20:9 | 43:11 | 52:21 | PA 1:20 2:4 | 12:15 | persuade | 22:11,16 |
| mean 19:8 | 56:8 | 22:16 | October | other 6:8 | 2:10,15 | 13:2 | 40:21 | 23:1,2,5,8 |
| 24:6 | must 22:9 | none 37:12 | 32:9 | 7:13 8:1 | 2:21 3:11 | 38:16,18 | 42:9 | 23:11 |
| 25:13 | 28:20 | Notary | off 36:11 | 8:7 9:2 | 3:21 | 45:3 | ph 2:5,10 | 25:16,20 |
| 53:18 | 52:1 | 1:14 58:4 | office 27:14 | 12:2,11 | pack 55:9 | performa... | 2:16,21 | 26:5,10 |
| 54:23 | | Nothing | 28:7,15 | 15:5 | page 46:4,4 | 11:19 | 3:12,22 | 26:12 |
| means | **N** | 43:12 | 28:16 | 16:16,22 | 46:9 | 37:2 | Philadelp... | 27:3 |
| 58:20 | N 3:19 | notice 5:15 | 41:15 | 17:1 | 47:10 | 43:21 | 1:20 2:4 | 51:20,20 |
| media 3:21 | Nace 1:4 | 6:1 8:20 | 51:7 | 18:10,18 | pages 45:5 | 52:23 | 2:15 4:13 | portion |
| 27:6,6,6 | 4:18 | 10:5,6,17 | official 48:9 | 19:16,18 | paid 48:23 | period 5:4 | phone 18:7 | 49:3 |
| 30:2 | 27:13 | 17:3 | Oh 28:1 | 19:21,22 | 49:2,6,7 | 11:16 | photogra... | position |
| 32:13,18 | | 19:18 | 50:23 | 23:12 | paper | 21:2,20 | 32:3 41:8 | 11:1,3,10 |

Nancianne Edwards                                                  Nace vs. FCA, et al.

May 19, 2015

Page 6

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 12:15 | 54:1 | 58:4 | 36:2,14 | rcox@eas... | 34:5 | relating 7:5 | request | resigning |
| 13:7,13 | prison | publication | 40:19 | 2:22 | recomme... | 21:22 | 14:4,18 | 18:2,8,10 |
| 17:17 | 32:11 | 31:17 | 41:8 43:3 | reaching | 45:15 | relation | 27:22,23 | 49:17 |
| 20:7 21:5 | probably | published | 43:16 | 38:18 | recomme... | 21:5 | 27:23 | resources |
| 35:24 | 19:5 | 31:20 | 44:2,4,8 | read 4:21 | 11:19 | relations | 28:3,6,11 | 11:9,15 |
| 36:16 | 45:22 | pull 28:8 | 44:15 | 26:14 | recomme... | 11:19 | 28:18,19 | 11:18 |
| 46:21 | problem | pulled | 45:4,13 | 27:3,9 | 45:10 | relations... | 28:24 | 14:9,16 |
| 47:2 | 43:7 | 16:13 | 48:11,16 | 32:13 | record 8:3 | 44:13 | 29:16 | 22:13 |
| 49:18,21 | problems | 28:10 | 48:19 | 51:17 | 36:21 | relative | 33:16 | 23:24 |
| 52:9 | 27:7 32:5 | purpose | 49:15 | reading | 38:11 | 58:12 | 34:1 41:7 | 47:22 |
| 55:12 | 43:2,20 | 34:19 | 52:3,9,20 | 25:22 | 55:16 | release 25:3 | 50:18 | 51:7 |
| positions | 44:1 | put 37:17 | 53:6 54:2 | 30:1,6 | records | removed | requested | respond |
| 45:9 47:4 | procedure | 37:17,20 | 54:6 | 46:8 | 13:22 | 41:1 | 28:10 | 7:21,23 |
| 47:6 | 38:23 | 38:10 | Quakerto... | really 47:14 | 14:1,5,18 | repay 34:20 | 50:15 | 8:18 |
| posted | proceed 8:4 | 46:8 | 14:5 | Realtime | 27:20,24 | 34:24 | requesting | 10:16 |
| 49:18,21 | process | 53:19 | Quakerto... | 58:16 | 31:12 | 35:14 | 38:9 | 34:8 35:5 |
| posting | 6:10 8:17 | P.C 2:19 | 10:1 | reason 9:18 | 33:17,18 | rephrase | requests | responded |
| 49:18 | 25:8 38:4 | 3:18 | question | 18:17,18 | 44:16 | 6:23 | 28:1,2 | 28:5 |
| 50:1 | 38:6,7 | p.m 1:13 | 4:4 6:20 | 55:2 | red 46:8 | replacem... | require | responding |
| practice | 39:11,14 | 56:12 | 6:21,22 | reasons 7:7 | referring | 50:1 | 41:11 | 41:17 |
| 54:16 | 39:19,22 | P.O 2:20 | 6:23,23 | 18:3,8,11 | 12:8 | report | 54:23 | response |
| preferred | 40:4,15 | | 6:24 7:2 | recall 6:5 | refers 50:9 | 38:22,22 | required | 7:17 9:8 |
| 35:24 | 45:14 | **Q** | 7:3,6,15 | 9:13 | reflects | 39:2,17 | 22:11 | 14:3 |
| prelimina... | 48:7 53:1 | Quakerto... | 7:16,23 | 16:14,16 | 55:17 | 40:10,14 | 24:8 | 29:15 |
| 38:24 | 53:5 54:2 | 2:11 5:1 | 8:1,2,2,4 | 17:12,18 | regard 26:5 | 41:13 | 38:21 | responses |
| premises | produce | 5:3,14,16 | 8:5,10,11 | 19:13,22 | 26:10 | 43:12,14 | 40:13 | 38:9 |
| 33:18 | 5:15 | 5:23 6:8 | 9:6,12 | 21:4,24 | 27:12,19 | reporter | 53:1,4 | responsib... |
| presently | Professio... | 8:18,24 | 18:12 | 26:7 27:8 | 29:5 30:9 | 1:14,15 | 54:18,22 | 11:15 |
| 12:18 | 1:14 58:4 | 10:4,11 | 27:1 33:8 | 27:17,22 | 41:18 | 7:10,20 | 54:23 | responsib... |
| press 27:6 | 58:16 | 10:15,22 | 33:22 | 27:23 | 42:3 | 58:4,16 | requirem... | 15:16 |
| previous | program | 11:5,24 | 52:22 | 28:7,17 | regarding | 58:16,22 | 24:1,4 | responsible |
| 21:6 | 21:12,13 | 12:19,20 | questioning | 28:18,23 | 5:2,12 | reporting | 25:7 | 11:17 |
| 39:14 | Proof 22:9 | 13:3,12 | 16:21 | 29:1,24 | 16:14 | 27:5 | 54:20 | 15:12 |
| previously | prospective | 13:19 | 38:15 | 30:1,6 | 17:22 | 39:17 | reserved | 23:23 |
| 39:22 | 55:4 | 15:9,24 | questions | 32:4,7,12 | 18:7,17 | 40:3 | 4:4 | 41:16 |
| 44:5 | Protective | 16:3,18 | 6:17 7:11 | 35:2,4,8 | 19:17,19 | reports | 58:16,22 | 53:10 |
| principal | 23:19 | 17:1,9,10 | 7:18,22 | 43:17 | 19:23 | 32:13,18 | resignation | responsive |
| 36:5,11 | provide 9:7 | 17:23 | 8:7,14,19 | 47:3 | 27:7 | 20:24 | 13:14 | 9:10 37:9 |
| 45:10,15 | 44:18,22 | 18:24 | 9:8,10 | receipt 22:3 | 29:16 | represent | 18:16,18 | restate 6:23 |
| 45:18,23 | 52:13 | 19:7,14 | 26:1,4 | 22:4 51:5 | 34:4 37:1 | 4:11 | 18:19 | retrieve |
| 45:24 | provided | 19:19,20 | 27:15 | receive | 37:3,15 | 10:15 | 19:9 | 14:9 |
| 53:13,15 | 12:23 | 20:2,13 | 33:6 | 46:24 | 43:2,12 | represent... | 20:16,22 | retrieved |
| print 27:6 | 14:2,23 | 21:11,19 | 42:13 | received | 43:24 | 5:1,16 | 20:24 | 33:13 |
| 30:2 | 16:24 | 21:20 | 55:23,24 | 22:10 | 44:12 | 53:5 | 21:3 | retrieving |
| prior 11:6 | 18:13 | 22:8 | 56:6 | 25:21 | 10:15 | represent... | 34:18 | 33:23 |
| 16:18 | 25:19 | 26:13 | quick 6:16 | 26:11,12 | 52:13 | 29:20 | 35:20 | return |
| 27:22,23 | 28:10,12 | 27:15,16 | quickly | 26:21,24 | Regardless | represent... | 44:4 | 22:12 |
| 28:2,6,19 | 29:2,23 | 27:19 | 6:14 | 32:22 | 32:17 | 8:24 | 47:19 | returned |
| 28:23 | 36:22 | 29:14,20 | | 33:10,16 | Registered | reproduc... | 48:7,8,10 | 20:9 22:9 |
| 29:15 | 45:1 | 30:5,9,10 | **R** | 37:12,14 | 1:14 58:3 | 58:20 | 48:18 | returning |
| 30:12 | providing | 30:13,24 | rate 45:11 | receiving | 58:16 | reputation | 50:3,16 | 51:6 |
| 32:19 | 23:12 | 31:12 | 46:12,14 | 27:22 | regulations | 38:14 | 50:20,21 | review 5:24 |
| 35:19 | Public 1:15 | 32:19 | 46:22 | recollection | 51:16 | | 55:18 | 23:11 |
| 39:1 | 41:16 | 33:1,3,7 | 51:4 | 51:16 | related | | resigned | 33:1,24 |
| 48:24 | 42:2 | 33:21 | rates 46:13 | recollecti... | 10:8,8 | | 5:5 35:22 | 39:15 |
| 52:13,23 | 54:15 | 34:4,13 | | 7:4 35:6 | 17:8 58:9 | | 35:23 | 44:16 |
| | | | | 35:21 | | | 50:1 | |
| | | | | recollecti... | | | | |

Nancianne Edwards                                                                     Nace vs. FCA, et al.
May 19, 2015

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| reviewed | 19:6,20 | 15:9 19:1 | 47:17 | signing 4:2 | 40:21 | sport 21:17 | students | 40:9 |
| 26:18 | 27:7,20 | 21:21 | 49:20 | 26:20 | 42:21 | 47:15 | 30:9 37:4 | 53:17 |
| reviews | 30:10 | 22:8 25:2 | sentence | 51:6 | 45:21 | 49:4,6 | 37:7 | sure 4:21 |
| 13:14 | 32:5 33:2 | 27:13 | 50:13 | similar | 52:22 | sports | subject | 6:20,20 |
| 16:10 | 34:1,5,12 | 31:13 | sentenced | 22:14 | someone | 21:12 | 4:14 10:8 | 23:10 |
| 36:17 | 36:16 | 36:5,11 | 32:11 | simply 6:22 | 27:9 28:8 | 31:24,24 | 36:15 | 26:14,17 |
| Rice 12:24 | 37:2 43:2 | 46:3,5 | separate | 49:19 | 28:21 | spring 4:19 | 37:9 42:6 | 39:1,15 |
| right 9:21 | 43:21 | 47:9,11 | 37:23 | since 9:14 | something | 21:17 | 43:1 | 44:23 |
| 40:12 | 47:19 | 48:17,19 | September | 11:4 | 12:8,10 | 47:15 | 44:19 | 53:2 |
| 45:6 | 51:1,9 | 48:20 | 11:11 | 34:10 | 24:17,22 | 48:22 | 50:5 | suspected |
| ring 29:6 | 54:2,13 | 49:16 | Serge 36:10 | 47:14 | 30:20 | 49:4,6,8 | subjects | 37:4 |
| 29:11 | room-sett... | 50:20 | series 6:17 | 55:18 | 31:16 | staff 12:2 | 13:11 | suspicions |
| Road 3:9 | 24:18 | 51:4 52:4 | service | sir 29:8 | 37:17 | 34:4 | submitted | 30:3 |
| ROBERT | rumors | 53:13 | 46:14 | situation | 48:14 | start 11:10 | 48:14 | 44:12 |
| 2:19 | 37:3 | 54:22 | Services | 25:19 | 49:14 | 33:5 | subpoena | suspicious |
| Romig 4:15 | 44:11 | 55:11,13 | 23:10 | 38:19 | 50:21 | started | 19:22 | 37:3 |
| 4:23 5:2 | Russell | Schorn | set 58:7 | six 44:10 | sometime | 17:13 | 27:24 | Swedesford |
| 5:3,9 7:5 | 3:14,24 | 29:6 | setting | Slattery | 28:4 | starting | 28:24 | 3:9 |
| 12:24 | Ryan 3:14 | sealing 4:2 | 24:19 | 29:11 | 32:10 | 49:9 | 29:2 | sworn 4:7 |
| 13:17 | 3:24 | search 8:23 | seven 32:11 | slip 22:12 | somewhere | 29:2 | 32:22,23 | 58:6 |
| 14:18 | ___ S ___ | 9:9 14:5 | several | softball | 37:18 | starts 55:7 | 33:10 | Sylvia 17:6 |
| 15:8,18 | salary | 14:17 | 34:21 | 4:24 | soon 40:14 | state 8:3 | subseque... | 20:14 |
| 16:6,18 | 19:10 | 34:7 | 35:18 | 12:16 | sorry 23:6 | 18:9,10 | 39:18 | 47:17 |
| 17:9 | 34:20 | searching | 36:7 | 15:10 | 45:2 47:5 | 54:14 | substance | 50:3 |
| 18:23 | 35:15 | 13:21 | sexual 4:17 | 21:6,12 | 52:5 | stated | 17:21 | ___ T ___ |
| 20:2,9,12 | 46:7,7 | season | 21:22 | 21:15 | sort 33:15 | 17:24 | such-and-... | take 7:10 |
| 20:14 | same 28:11 | 20:10,18 | 23:9 | 31:13 | 44:24 | 18:17,21 | 47:2 | 9:20 12:7 |
| 21:10 | 50:3 | 21:6,15 | 25:16 | 46:6,11 | source 31:5 | States 1:1 | sufficient | 20:7,17 |
| 22:1,7 | 58:20 | 48:22,22 | 30:4,4 | 47:11 | sources 9:3 | 1:15 | 9:15 | 23:13 |
| 23:12 | SANTAR... | 48:24 | 39:24 | 49:22 | South 1:19 | stationery | Suite 1:19 | 33:5 |
| 25:18 | 2:14 56:1 | 49:9,13 | 40:20,22 | 51:3 | space 52:12 | 48:17 | 2:4,15 | 40:15 |
| 27:12 | saw 10:13 | second 3:20 | 42:11 | 55:12 | speak 17:7 | statutory | 3:10 | 51:9 |
| 29:5,16 | 32:13,18 | 6:1 30:19 | 43:5 | some 4:17 | speaking | 50:22 | summer | taken 48:23 |
| 30:3 31:2 | 33:12 | 31:1 35:9 | sexually | 5:2,12 | 7:10 | step 26:22 | 4:20 | 58:11 |
| 31:7,14 | 52:18 | 39:4 | 41:7 | 6:8 7:18 | 19:13 | 27:1 | superinte... | talk 13:21 |
| 34:11 | says 22:7,9 | 45:13 | shake 7:19 | 9:13 | 38:6 | 33:22 | 11:2 | 31:7 |
| 42:8 | 26:10,22 | see 18:14 | sheet 16:8 | 12:11 | 45:19 | steps 33:15 | superinte... | talked |
| 43:18 | 46:20 | 20:13 | 49:24 | 15:4,5 | special-ed... | still 8:10 | 19:24 | 18:22 |
| 44:1,7,13 | 47:10 | 27:2 | shorten | 16:20 | 30:18,21 | 13:2 | supervised | 51:19 |
| 45:13 | 48:9 | 33:11 | 33:9 | 18:14 | specific | 42:22 | 20:11 | talking |
| 46:5,17 | 49:18 | seeing | shorthand | 21:2,21 | 21:24 | Street 1:19 | 21:9 | 7:13 9:14 |
| 47:10 | 50:11 | 16:14 | 58:22 | 24:17,18 | 24:7,9 | 2:3,14,20 | 42:22 | 22:20 |
| 48:4,6,8 | 51:5,15 | 28:18 | show 10:10 | 27:11 | 25:17 | 3:20 | supervising | 28:2 |
| 48:16,18 | Schoch | seek 8:22 | showed | 30:2 | 41:15,20 | strike 13:15 | 52:14 | 46:19 |
| 49:17,20 | 14:13 | seen 10:11 | 44:5 | 31:16 | 42:2 | 16:9 | supervision | 47:15 |
| 50:4,11 | 16:22 | 28:20 | shows | 32:8,24 | specifically | 21:15 | 58:21 | talks 23:8 |
| 52:14,22 | 19:16 | seminar | 47:10 | 33:5 | 8:5 12:1 | 39:21 | supervisor | teacher |
| 53:11 | school 1:6 | 25:14 | sign 22:3 | 40:21 | 21:13 | student | 20:3 | 13:8 |
| 54:1 | 2:11,23 | sending | 22:12 | 44:18,21 | 32:7 | 30:12 | 43:18 | 30:18 |
| 55:10 | 5:4,14,17 | 35:14,17 | signature | 51:15 | specifics | 37:15 | superviso... | 40:9 |
| Romig's | 5:23 6:8 | senior 15:9 | 22:13 | 53:5,6,7 | 6:2 | 38:4 | 21:1 | teachers |
| 5:10,13 | 9:1 10:16 | 46:6 | 51:9 | 55:23 | speech | 39:24 | supplied | 12:2 |
| 12:15 | 10:23 | sense 12:6 | signed 22:4 | somebody | 25:14 | 40:18 | 20:13 | 53:21 |
| 13:12 | 11:6,24 | 12:10 | 22:7 | 8:18 | spoke 17:6 | 41:9 | supposed | team 31:14 |
| 16:15 | 12:16 | sent 5:14 | 46:16,20 | 24:18 | 27:10 | 42:10 | | 31:18,24 |
| 17:22 | | 22:6 35:8 | 51:12 | 28:15 | | 43:7 | | |
| | | | | | | 44:14 | | |

Nancianne Edwards

May 19, 2015

Nace vs. FCA, et al.

Page 8

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 43:14 | 18:14 | 17:18 | 52:2 | **V** | 23:7 | 56:9 58:6 | 52:16,17 | 2007/2008 |
| 46:6 | 20:19 | 36:11 | type 13:24 | **VAKIL** | 26:20 | witnesses | yielded 9:9 | 46:5 51:3 |
| 49:22 | 22:16 | today 6:11 | 14:7 | 3:18 | 28:20 | 38:16 | young 4:18 | 2008 21:16 |
| **teams** | 32:9 | 30:8 | 22:19 | **Valley** 1:12 | 33:8 38:7 | words 33:4 | | 22:14 |
| 31:24 | 33:22 | 31:10 | 24:19 | 2:9 | 40:13 | 34:3 | **Z** | 25:9 36:9 |
| tell 9:7,11 | 40:5 44:4 | topic 18:22 | 25:12 | vault 33:14 | 44:11 | work 6:7,9 | **Zachary** | 51:2 |
| 9:15 23:2 | 45:12 | 37:10 | 31:17 | verbal 7:17 | 46:3 | 34:22 | 14:13 | 55:14 |
| 32:15 | 52:6 | 43:5 | 32:1 | 35:7 | 49:23 | 35:24 | 16:22 | 2008/2009 |
| 35:22 | 54:19 | 44:10,18 | 37:24 | **verbally** | went 33:22 | 41:2 55:7 | | 47:9 |
| 48:2 49:5 | third 42:6 | topics 5:24 | 40:15,22 | 7:21 | were 5:24 | worked | **$** | 2009 5:5 |
| telling 31:9 | 55:13 | 10:7,8,12 | 42:18 | 12:11 | 6:6,7 | 19:14 | **$3,073.90** | 11:24 |
| ten 48:17 | **thousands** | 10:17 | 43:6,6 | 25:15 | 11:5 12:4 | working | 51:4 | 21:10 |
| **tenure** | 35:3 | 17:2 | 53:17 | **VERONI...** | 12:15,22 | 18:24 | **$3,135.38** | 47:15 |
| 19:20 | three 24:9 | 19:17 | types 23:7 | 3:19 | 14:6 15:3 | 54:5 | 46:15 | 55:10,15 |
| 34:12 | 32:11 | 34:8 | | very 7:12 | 16:11 | workplace | | 2009/2010 |
| 36:2 54:2 | 46:4,13 | 36:12 | **U** | 15:11 | 21:21,24 | 22:15 | **#** | 55:12 |
| **term** 36:8 | 47:10 | toward | Uh-uh | 24:9 | 22:20 | writing | #346 3:10 | 2010 5:6 |
| 37:12 | 49:7 | 37:4 | 47:20 | 55:23 | 23:13,14 | 12:8 | | 15:11 |
| 52:8 | 52:16,17 | 43:21 | under | 56:8 | 23:15 | 23:13,14 | **1** | 20:15 |
| **terminati...** | 54:18,19 | tracking | 49:18 | videos 37:6 | 25:14 | 23:15,15 | 1 11:4 | 43:4 |
| 13:14 | 54:21 | 49:24 | 58:21 | 41:8 | 26:1 28:5 | 25:20 | 1st 5:7 32:9 | 47:18 |
| **terminati...** | **through** | trained | understand | view 34:1 | 29:1,10 | 35:7,21 | 10 21:16 | 48:15,21 |
| 14:6 | 6:11,13 | 24:1 | 6:21,22 | virtue 26:2 | 30:2 | 37:17 | 25:9 57:1 | 48:22,22 |
| **terminati...** | 6:14 | trainer | 6:24 8:12 | visual 27:6 | 31:18 | 38:10 | 100 33:21 | 50:4 |
| 36:18 | 16:20 | 24:17 | 9:16,22 | voice 15:21 | 32:17 | 53:7,18 | 12th 55:10 | 55:19,20 |
| terms 11:18 | 32:15 | training | 13:16 | volszewsk... | 34:8 35:7 | 53:19 | 1389 2:20 | 2013 4:20 |
| 25:21 | 42:19 | 24:3,7,9 | 18:12 | 3:23 | 35:13 | written | 14th 48:21 | 32:9 |
| testified 4:7 | time 4:5 | 24:16 | 39:10 | vs 1:5 | 36:12 | 15:4 26:3 | 15th 48:17 | 2014 11:4 |
| testify 5:2 | 7:11 9:13 | 25:10,12 | understa... | | 38:14 | 28:18,19 | 15-333 1:6 | 11:12 |
| 8:22 | 11:16 | 25:17 | 12:13 | **W** | 42:14,14 | 28:24 | 1500 2:3 | 32:10 |
| **testimony** | 15:8,17 | trains | 25:22 | waiting | 45:1 | 38:11 | 1503 1:19 | 39:8,23 |
| 39:10 | 15:18 | 24:18 | 35:23 | 40:15 | 54:19 | 46:19 | 17th 1:19 | 40:10 |
| texting 37:6 | 16:13 | transcript | understood | waived 4:3 | we'll 6:1 | www.bru... | 18901 2:21 | 2015 1:8 |
| 40:20,20 | 18:23 | 7:11,20 | 7:3 | Walnut 2:3 | 9:21 10:9 | 1:21 | 19 1:8 | 5:7,9 |
| 40:20 | 19:13 | 58:5 | union 38:14 | want 36:10 | 16:20 | | 19th 22:14 | 10:5 |
| **Thank** | 20:21,24 | trial 1:2 4:5 | unit 38:14 | 44:21 | 18:14 | **X** | 19047 2:10 | 215.345.7... |
| 55:23 | 21:2,20 | true 58:5 | 49:7,16 | 50:7 | 45:12 | X 46:22 | 19063 3:21 | 2:21 |
| 56:8 | 22:1 | try 7:14 | United 1:1 | **WARNER** | we're 6:11 | | 19087 3:11 | 215.568.4... |
| their 24:14 | 23:14 | 13:22 | 1:15 | 2:13 | 9:14 | **Y** | 19102 2:4 | 2:5 |
| 34:5 | 25:13,18 | 15:22 | unit-pay | wasn't | 47:15 | year 21:7 | 19103 1:20 | 215.575.2... |
| 38:10 | 26:14 | 40:20 | 47:4,5 | 37:23 | we've 36:13 | 31:1,21 | 2:15 | 2:16 |
| 45:2 47:1 | 30:7 31:3 | trying 5:12 | unlawful | way 5:8 | while 4:23 | 46:5,10 | | 215.750.0... |
| thing 6:19 | 32:8,23 | **Tuesday** | 22:11 | 16:16 | 5:13 | 46:14 | **2** | 2:10 |
| 14:7 32:1 | 33:14 | 1:8 | 23:1,8 | 17:1 | 12:24 | 47:9,12 | 2:33 20:15 | 215.772.1... |
| 35:9 | 34:15 | turn 35:10 | 26:10 | **Wayne** | 13:18 | 49:3 51:4 | 2000 2:14 | 1:20 |
| 40:23 | 35:13 | **turned** | unless 7:24 | 3:11 | 19:6 30:5 | 55:13,13 | 2003 11:11 | 2300 2:15 |
| 43:6 | 38:23 | 14:20 | 8:4,8 | **website** | 33:2,7 | 55:19 | 2007 5:5 | 255 1:19 |
| 50:22 | 39:3 | 16:11 | 58:21 | 24:21 | 44:8 | **yearbook** | 7:5 9:14 | 27 51:2 |
| things 6:13 | 43:17 | 29:14 | until 4:4 | welcome | widely 4:22 | 31:16,20 | 11:23 | 28 10:5 |
| 9:14 | 47:3,23 | 55:18 | 5:5 11:12 | 56:9 | **William** | 32:2 | 15:11 | 295 3:9 |
| 21:22,24 | 52:1,10 | two 5:9 7:7 | 20:6 | **Welfare** | 20:1 | yearly 12:4 | 21:10 | |
| 23:7 | 52:19 | 7:9,13 | use 21:23 | 41:16 | winter 49:8 | years 5:4 | 38:2 | **3** |
| 43:14 | 53:4,15 | 20:12 | used 25:4,6 | 42:2 | wish 8:9 | 19:14 | 40:17 | 3:00 1:13 |
| **think** 5:4,5 | 54:5,13 | 22:6 | 52:10 | 54:15 | **witness** | 24:10 | 41:23 | 30 3:20 |
| 5:17,19 | 55:15 | 36:24 | using 24:20 | well 10:9 | 8:21 | 31:14 | 43:3 | 300 2:4 |
| 6:18 | **timing** | 51:23,24 | | 14:15 | 15:22 | 32:11 | 52:20 | 31st 39:8 |
| | | | | | | | 53:9 55:2 | |

Nancianne Edwards

Nace vs. FCA, et al.

May 19, 2015

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 39:22<br>40:10 | | | | | | | | | |
| **4** | | | | | | | | | |
| **4th** 5:9<br>**4:30** 56:11 | | | | | | | | | |
| **5** | | | | | | | | | |
| **5th** 5:6<br>20:15<br>47:18<br>48:15<br>50:4<br>55:19 | | | | | | | | | |
| **6** | | | | | | | | | |
| **60** 2:20<br>**610.585.0...**<br>3:22<br>**610.783.3...**<br>3:12<br>**680** 1:11<br>2:9 | | | | | | | | | |
| **8** | | | | | | | | | |
| **8** 38:2<br>40:17<br>41:23<br>55:2 | | | | | | | | | |
| **9** | | | | | | | | | |
| **9** 21:16<br>25:9 36:9<br>38:2<br>40:17<br>41:23<br>55:2 | | | | | | | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES NACE AND APRIL NACE      :
as Guardians of E.N. a minor,  :
                               :
         Plaintiff             :
                               :
         v.                    :          CIVIL ACTION NO. 15-333
                               :
PENNRIDGE SCHOOL DISTRICT, et al.:
                               :
                               :
         Defendants            :

## PLAINTIFF'S RULE 30(b)(6) NOTICE
## OF DEPOSITION DIRECTED TO QUAKERTOWN
## COMMUNITY SCHOOL DISTRICT

PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, plaintiff will take the deposition upon oral examination of a representative(s) and/or designee(s) of Quakertown Community School District to discuss information known or reasonably available to The District with regard to the subjects/topics listed below. The deposition(s) will take place at the law offices of Begley, Carlin & Mandio, LLP, 680 Middletown Blvd, Langhorne, PA 19042 commencing at 3:00 PM on May 19, 2015. The District has a duty to designate witnesses with personal knowledge of the topics to be discussed, or to make a reasonable attempt to investigate and obtain facts and information regarding those topics.

This deposition will be taken by stenographic means before an officer authorized to administer oaths and will continue until completed. The deposition(s) will be taken for the purposes of discovery, for use at trial in this matter, and for any other purpose permitted under the Federal Rule of Civil Procedure.

HORNSTINE, PELLONI & HORNSTINE

Dated: April 28, 2015

BY: David J. Groth, Esq.
ATTORNEY FOR PLAINTIFF
Hornstine Pelloni & Hornstine
1500 Walnut Street, Suite 300
Philadelphia, PA 19102
(215) 568-4968



EXHIBIT
Quakertown-1
5-19-15

Appendix1035

## SUBJECTS TO BE DISCUSSED

1. Eric Romig's hiring, employment position, employment evaluations and/or reviews, and termination/resignation.

2. Complaints, allegations, or accusations regarding Eric Romig's job performance or behavior, including but not limited to any suspicions and/or rumors regarding any suspected inappropriate behavior toward female students or athletes, such as inappropriate physical contact, texting, language, photos or videos directed to, or exchanged with, female students.

3. Any facts or information indicating that Eric Romig attempted to induce, entice, persuade, convince or coerce any female student to engage in any form of inappropriate or explicit sexual activity.

4. Any concerns, problems, complaints or issues regarding Eric Romig's coaching activities at Quakertown between 2007 and 2010, inclusive.

5. Any information regarding any health issues or problems experienced by Eric Romig during his employment by Quakertown.

6. Any facts and information, as well as any rumors, suspicions or accusations regarding an inappropriate personal relationship between Eric Romig and Alicia Hughes, and/or any other female student or athlete at Quakertown.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES NACE AND APRIL NACE<br>as Guardians of E.N. a minor,<br><br>Plaintiff<br><br>v.<br><br>PENNRIDGE SCHOOL DISTRICT, et al.:<br><br>Defendants | CIVIL ACTION NO. 15-333 |

## CERTIFICATION OF SERVICE

I, David J. Groth, Esq., hereby certify that I served a true and correct copy of the above, Notice

of Deposition on April 28, 2015, via First Class U.S. Mail addressed as follows:

Carla E. Connor, Esquire
Cassidy, Connor & Pitchford, LLC
295 E. Swedesford Rd., Suite 346
Wayne, PA 19087

Joseph J. Santarone, Jr., Esquire
Marshall Dennehey Warner Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA 19103

Sean V. Kemether, Esquire
Kelly Grimes Pietrangelo & Vakli, P.C.
36 East Second Street, P.O. Box 1048
Media, PA 19063

Eric Romig
Inmate # LN3630
State Correctional Institute - Retreat
660 State Route 11
Hunlock Creek, PA 18621

Robert M. Cox, Esquire
Joanne D. Sommer, Esquire
Erin N. Kearn, Esquire
Eastburn and Gray, P.C.
60 East Court Street
P.O.Box 1389
Doylestown, PA 18901

Jonathan J. Russell, Esquire
Drake Hileman & Davis
Bailiwick Office Campus, Suite 15
P.O. Box 1306
Doylestown, PA 18901

Date:   April 28, 2015

_____
David J. Groth, Esq.