# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ELIZABETH ANN NACE, | CIVIL ACTION |
|---|---|
| Plaintiff, | |
| v. | NO. 15-333 |
| FAITH CHRISTIAN ACADEMY, RYAN CLYMER AND RUSSELL HOLLENBACH, | |
| Defendants. | |

## MEMORANDUM OPINION

This case concerns a high school softball coach, Eric Romig, who engaged in an unlawful sexual relationship with a then-fifteen-year-old player on his team, Plaintiff Elizabeth Ann Nace, and a private school, Faith Christian Academy, that had previously forced the coach to resign due to allegations of sexual harassment of a student, but never reported those allegations to outside authorities.

In 2016, this Court issued an opinion, which, *inter alia*, granted summary judgment to Defendants Faith Christian Academy, Faith Christian Headmaster Ryan Clymer, and Faith Christian Athletic Director Russell Hollenbach (collectively, the "Faith Christian Defendants") on all claims against them. *Nace v. Pennridge Sch. Dist.*, 185 F. Supp.3d 564 (E.D. Pa. 2016) ("*Nace I*"). Plaintiff appealed. The Third Circuit affirmed this Court's ruling, except as to Plaintiff's negligence *per se* claim against the Faith Christian Defendants. *Nace v. Pennridge Sch. Dist.*, 744 F. App'x 58, 67 (3d Cir. 2018) ("*Nace II*"). With regard to that claim, the Third Circuit found a genuine issue of material fact on one element and remanded for this Court "to assess whether there exists a genuine dispute of material fact on the other required elements for a

1

negligence per se claim." *Id.* at 64.

Accordingly, on remand, this Court undertakes that analysis. Further, in the initial 2016 proceedings, this Court denied two motions as moot after finding that summary judgment would be granted to the Faith Christian Defendants: (1) Faith Christian Academy's motion to preclude the testimony of Plaintiff's expert Brad M. Jackman; and, (2) Clymer and Hollenbach's motion for summary judgment on Plaintiff's claim for punitive damages. The vacatur of this Court's summary judgment decision on the negligence *per se* claim renders those motions ripe for adjudication.

For the reasons that follow, the Faith Christian Defendants' motions to grant summary judgment, preclude expert testimony, and preclude punitive damages against Clymer and Hollenbach shall each be denied.

I. **BACKGROUND**

The factual background of this case has been detailed extensively in prior decisions and need not be repeated at length. *See Nace I*, 185 F. Supp.3d at 570-74; *Nace II*, 744 F. App'x at 60-62. As relevant here, Romig was employed as a high school coach at Faith Christian Academy between 2003 and 2010. In December 2009, reports surfaced that Romig had an inappropriate relationship with a Faith Christian Academy student, E. Mayer. Mayer was 17 at the time, and turned eighteen on December 29, 2009. When Clymer, the headmaster, learned of Mayer's allegations, he investigated them by speaking to Mayer for about ten minutes the week before Christmas break in 2009; he also spoke with Mayer's parents, the assistant basketball coach who worked with Romig, two other female Faith Christian Academy students rumored to have experienced inappropriate behavior by Romig, Faith Christian Academy's attorneys, and a friend who was a police chief in another jurisdiction. Further, Clymer confirmed through phone

records provided by Mayer's parents that Romig had sent Mayer over 3,000 texts between September and December 2009, but the texts had since been deleted. Mayer nonetheless provided Clymer with descriptions of some of the text messages, including one in which Romig allegedly texted Mayer, "I want to be in you," and others stating that Romig loved her, did not want her to be with her boyfriend, and wanted to marry her. Mayer did not state that Romig had any inappropriate physical sexual contact with her. For his part, Romig denied that the texts contained inappropriate content. Clymer also followed up on Mayer's statement that Romig had inappropriate relationships with other students, but these students also denied any physical sexual involvement with Romig. Separately, Clymer conveyed at least some of this information with Hollenbach, the athletic director.

Based on his evidence and the advice of school counsel, Clymer asked Romig to resign. On January 5, 2010, Romig did so, citing only health reasons as the reason for his departure. No one at Faith Christian reported Romig's conduct to law enforcement or the Pennsylvania child protective services agencies.

Subsequently, Romig was hired as a coach by Pennridge School District for the 2011-2012 school year. In his application materials, Romig did not reference Faith Christian Academy—but he did list Hollenbach as a personal reference. Pennridge obtained all required background and criminal history checks, which were clear and did not indicate any issue in Romig's history. Plaintiff was a student on Romig's team during the 2011-2012 and 2012-2013 school years. Beginning in April 2013, Romig used text messages to cultivate a relationship with then-fifteen-year-old Plaintiff—a relationship that became physically sexual during the summer. In September 2013, Plaintiff's parents learned of the relationship and contacted law enforcement. Romig pled guilty to state criminal charges arising from his conduct with Plaintiff

3

and was sentenced to 3.5 to 7 years imprisonment.

## II. DISCUSSION

As noted, following this Court's grant of summary judgment to the Faith Christian Defendants, the Third Circuit vacated and remanded with instructions to consider whether summary judgment in favor of the Faith Christian Defendants on Plaintiff's negligence *per se* claim is warranted. This vacatur also reopened two related questions: whether Plaintiff should be precluded from offering expert testimony that bears on the negligence *per se* claim, and whether Clymer and Hollenbach are subject to punitive damages. Each is examined in turn.

### a. Summary Judgment on Negligence *Per Se* Claim

"[S]ummary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (quoting Fed. R. Civ. P. 56(c)). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-26 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-52 (1986)). In deciding a motion for summary judgment, "[t]he reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013).

Plaintiff's negligence *per se* claim against the Faith Christian Defendants is premised on their failure to report. Specifically, Plaintiff contends that the Faith Christian Defendants had a duty to comply with the mandatory child abuse reporting provisions of Pennsylvania's Child Protective Services Law ("CPSL"), 23 Pa. C.S.A. § 6301, *et seq.*, and breached that duty by

4

failing to report Romig's interactions with Mayer. Plaintiff asserts that, if the Faith Christian Defendants had complied with their duty, Romig would not have been able to obtain his coaching position at Pennridge, where he met Plaintiff and initiated an abusive relationship.

Under Pennsylvania law, "[t]he concept of negligence per se establishes both duty and the required breach of duty where an individual violates an applicable statute, ordinance or regulation designed to prevent a public harm." *J.E.J. v. Tri-Cty. Big Brothers/Big Sisters, Inc.*, 692 A.2d 582, 585 (Pa. Super. 1997) (internal punctuation omitted). "[T]o prove a claim based on negligence per se," a plaintiff must meet "the following four requirements:"

(1) The purpose of the statute must be, at least in part, to protect the interest of a group of individuals, as opposed to the public generally;

(2) The statute or regulation must clearly apply to the conduct of the defendant;

(3) The defendant must violate the statute or regulation;

(4) The violation of the statute or regulation must be the proximate cause of the plaintiff's injuries.

*Schemberg v. Smicherko*, 85 A.3d 1071, 1074 (Pa. Super. 2014).

The CPSL requires school employees and school administrators to report suspected sexual abuse and exploitation of students. Section 6352(a) addresses reporting by school employees and provides:

(1) Except as provided in paragraph (2), a school employee who has reasonable cause to suspect, on the basis of professional or other training and experience, that a student coming before the school employee in the employee's professional or official capacity is a victim of serious bodily injury or sexual abuse or sexual exploitation by a school employee shall immediately contact the administrator.

(2) If the school employee accused of seriously injuring or sexually abusing or exploiting a student is the administrator, the school employee who has reasonable cause to suspect, on the basis of professional or other training and experience, that a student coming before the school employee in the employee's professional or official capacity is a victim of serious bodily

5

> injury or sexual abuse or sexual exploitation shall immediately report to law enforcement officials and the district attorney under section 6353(a). . . . If an administrator is the school employee who suspects injury or abuse, the administrator shall make a report under section 6353(a).

23 Pa. C.S.A. § 6352(a).[1] Section 6353(a) addresses school administrators and school employees and states:

> An administrator and a school employee governed by section 6352(a)(2) (relating to school employees) shall report immediately to law enforcement officials and the appropriate district attorney any report of serious bodily injury or sexual abuse or sexual exploitation alleged to have been committed by a school employee against a student.

*Id.* at § 6353(a). Sections 6352 and 6353 therefore require schools to report to law enforcement where there is "reasonable cause to suspect" "sexual abuse or sexual exploitation" of a student. *See id.* at § 6353(a). A "student" is defined as "[a]n individual enrolled in a public or private school, intermediate unit or area vocational-technical school who is under 18 years of age." *Id.* at § 6303. "Sexual abuse or sexual exploitation" under this statute includes, *inter alia*, "[t]he employment, use, persuasion, inducement, enticement or coercion of a child to engage in or assist another individual to engage in sexually explicit conduct." *Id.*

As to the first requirement of Plaintiff's negligence *per se* claim—that the purpose of the statute be to protect a particular group of individuals encompassing Plaintiff—this Court previously held that Plaintiff failed to satisfy this prong. Relying on *J.E.J. v. Tri-Cty. Big Brothers/Big Sisters, Inc.*, 692 A.2d 582, 585 (Pa. Super. 1997), this Court found that Plaintiff "who was not enrolled as a student at Faith Christian and had no connection to the school, at least in this matter, falls 'outside of the group of individuals that the statute at issue is designed

---

[1] Sections 6352 and 6353 were repealed on December 30, 2014, but were in effect when the Faith Christian Defendants learned of Mayer's allegations against Romig in 2009. In addition, other provisions of the CPSL have been amended between 2009 and the present. Accordingly, citations to the CPSL refer to the provisions effective in 2009.

to protect.'" *Nace I*, 185 F. Supp.3d at 582 (quoting *J.E.J.*, 692 A.2d at 586). Accordingly, the Court granted summary judgment to the Faith Christian Defendants on this claim.

On appeal, the Third Circuit disagreed that summary judgment in favor of the Faith Christian Defendants was appropriate. *Nace II*, 744 F. App'x at 64. The Court of Appeals explained that "there is a genuine dispute of material fact as to whether [the Faith Christian] Defendants had reasonable cause to suspect sexual abuse or sexual exploitation of a student that would give rise to a reporting obligation under the CPSL," because "a jury could find Mayer's account of Romig's texts, which allegedly expressed Romig's love and sexual desire for Mayer, combined with the large volume of texts sent by Romig to Mayer and the rumors concerning Romig and other female students, sufficient to provide 'reasonable cause to suspect . . . sexual abuse or sexual exploitation.'" *Id.* (quoting Pa. C.S.A. § 6352(a)). The Third Circuit thus "vacate[d] the District Court's order granting summary judgment to [the Faith Christian] Defendants on Nace's negligence per se claim," and ordered that "[o]n remand, the District Court should proceed to assess whether there exists a genuine dispute of material fact on the other required elements for a negligence per se claim." *Id.*

Although the Third Circuit did not expressly discuss whether Plaintiff satisfied the first requirement of her negligence *per se* claim—that she is within a group of individuals that the statute was designed to protect—it is nonetheless apparent that the Third Circuit held in Plaintiff's favor on this point. Prior to the appeal, this Court's resolution of the negligence *per se* claim rested solely on the conclusion that Plaintiff was not within a group protected by the statute. By vacating this Court's decision, the Third Circuit necessarily disagreed and reversed on this issue. *Cf.* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4478 (2d ed.2002) ("The decision of an issue need not be express to

7

establish the law of the case. Implicit decision suffices."); *In re City of Philadelphia Litig.*, 158 F.3d 711, 717-18 (3d Cir. 1998) ("The law of the case doctrine . . . [applies to] legal issues that the court in a prior appeal actually decided, either expressly or by implication."); *see also United States v. Jordan*, 429 F.3d 1032, 1035-36 (11th Cir. 2005) ("An argument is rejected by necessary implication when the holding stated or result reached is inconsistent with the argument."). There is no additional factual development that remand might flesh out: whether Plaintiff falls within a class of individuals protected by the statute is a legal determination. *See Schemberg*, 85 A.3d at 1075. Accordingly, if the Court of Appeals had not rejected this Court's conclusion that Plaintiff failed to meet the first requirement, there would have been no basis to remand.[2] For these reasons, the Court shall treat *Nace II* as a reversal on the question of whether Plaintiff has met the first requirement of her negligence *per se* claim.

As to the second requirement of a negligence *per se* claim—that the statute or regulation clearly apply to the conduct of the defendant—Plaintiff has satisfied this element. To determine whether this prong is met, Courts analyze whether a defendant is *generally* regulated by the statute. *See, e.g.*, *HRANEC Sheet Metal, Inc. v. Metalico Pittsburgh, Inc.*, 107 A.3d 114, 126 (Pa. Super. 2014). Here, Clymer and Hollenbach were "school employees," as the term was defined in 2009, 23 Pa. C.S.A. § 6303 ("[I]ndividual employed by a public or private school, intermediate unit or area vocational-technical school"), and as the Third Circuit explained, the CPSL "require[d] schools to report to law enforcement" suspected abuse. *Nace II*, 744 F. App'x at 63. Thus, the Faith Christian Defendants were generally subject to the reporting requirements of the CPSL. As a result, the second requirement is satisfied.

---

[2] The Third Circuit's consideration of this issue is made all the more apparent by the Court of Appeals citation to *J.E.J.*, which was the basis of this Court's decision. *See Nace II*, 744 F. App'x at 63 (quoting *J.E.J.*, 692 A.2d at 585).

8

As to the third requirement—that the defendant must violate the statute or regulation—the Third Circuit stated that the evidence of Romig's texts with Mayer were "sufficient to provide reasonable cause to suspect sexual abuse or sexual exploitation," and thus found a genuine issue of material fact "as to whether [the Faith Christian] Defendants were required to report Romig's conduct to authorities under the CPSL." *Id.* at 64 (internal punctuation omitted). This amounts to a finding that the there is a genuine issue of material fact as to whether the Faith Christian Defendants violated the statute, because CPSL requires only that school employees report conduct once they find reasonable cause to suspect child abuse or exploitation. Accordingly, the Third Circuit held that Plaintiff raised a triable question on the third requirement.

The Faith Christian Defendants' arguments to the contrary are unavailing. Principally, they contend that a violation of the CPSL requires a *willful* failure to report, and that the Third Circuit expressed no view as to whether Plaintiff had raised a genuine issue of material fact as to willfulness. But this argument rests on a misreading of the statute. Both Sections 6352 and 6353 set forth reporting requirements and, in separate subsection, provide for criminal penalties where a defendant "willfully violates" these obligations. By specifying in one subsection that only "willful[] violation[s]" will incur criminal liability, the CPSL plainly contemplates that other, lesser "violation[s]" may occur, which need not be willful. *See* 1 Pa. C.S.A. § 1921 ("Every statute shall be construed, if possible, to give effect to all its provisions."); *see also Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1223 (Pa. 2002) ("[U]nder the doctrine of *expressio unius est exclusio alterius*, the inclusion of a specific matter in a statute implies the exclusion of other matters."). Simply, an individual failing to report in accordance with their obligations violates the CPSL; an individual *willfully* failing to report commits a criminal

9

offense. Accordingly, Plaintiff need not establish that the Faith Christian Defendants acted willfully to support her negligence *per se* claim,[3] and has raised a triable question of fact on the third prong.[4]

As to the fourth requirement—that the violation of the statute or regulation must be the proximate cause of the plaintiff's injuries—Plaintiff has also raised a triable issue of fact here. "Proximate causation is defined as a wrongful act which was a substantial factor in bringing about the plaintiff's harm." *Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (Pa. Super. 2005). "Proximate cause does not exist where the causal chain of events resulting in plaintiff's injury is so remote as to appear highly extraordinary that the conduct could have brought about the harm." *Id.* at 1286-87. "If . . . a jury may reasonably differ on whether the defendant's conduct was a substantial factor in causing the injury, generally, the case must go to the jury on those issues." *Straw v. Fair*, 187 A.3d 966, 994 (Pa. Super. 2018).[5]

---

[3] As part of their argument that Plaintiff has not raised a genuine issue of material fact as to willfulness, the Faith Christian Defendants assert that Mayer ceased to be a "student" within the meaning of the CPSL when she turned eighteen, shortly after the allegations regarding Romig's texting surfaced. The Faith Christian Defendants contend that only information known to Clymer *before* Mayer's eighteenth birthday is relevant to the determination of whether he willfully violated the statute.

This argument does not hold for a variety of reasons. First, as discussed, Plaintiff need not show that any violation was willful. Second, the Faith Christian Defendants did not raise any argument regarding the effect of Mayer's eighteenth birthday in their initial summary judgment briefing in 2016, or in their briefing on appeal. Accordingly, the argument is waived. *See Frank v. Colt Indus., Inc.*, 910 F.2d 90, 100 (3d Cir. 1990). Finally, to the degree it is relevant, Plaintiff has provided evidence that: (1) the allegations came to light at some point in the late fall of 2009; (2) Clymer spoke to Mayer the week before Christmas break in 2009; and (3) Mayer turned eighteen on December 29, 2009. Thus, even accepting the Faith Christian Defendants' argument about the effect of Mayer's age on their obligations, Plaintiff has presented evidence that Clymer was aware of Romig's actions prior to Mayer's eighteenth birthday.

[4] Additionally, the cases cited by Faith Christian Defendants are inapt, as they concern instances where courts considered whether immunity for public officials extended to CPSL reporting violations, and the *immunity* question turned on whether the defendant had acted willfully. *See Pursel v. Parkland Sch. Dist.*, 70 Pa. D. & C.4th 129, 136 (Pa. Com. Pl. 2005); *Jankowski v. Lellock*, 2013 WL 5945782, at *12 (W.D. Pa. 2013). The Faith Christian Defendants, however, are not public officials and thus are not entitled to immunity.

[5] While the Pennsylvania Supreme Court has consistently described the proximate cause as sounding more in fact, other Pennsylvania courts continue to describe it as sounds more in law. *Compare Rost v. Ford Motor Co.*, 151 A.3d 1032, 1049 (Pa. 2016) ("This Court has consistently and without exception held that issues of [proximate] causation are matters of fact for the jury to decide.") (internal citation omitted); *with Straw v. Fair*, 187 A.3d 966,

Plaintiff's theory of causation is that Faith Christian Defendants' failure to comply with their reporting obligations under the CPSL permitted Romig to be hired as a coach at Pennridge, where he came into contact and initiated an abusive relationship with Plaintiff. In support, Plaintiff has provided expert testimony from Brad M. Jackman, a Pennsylvania-based attorney whose practice centers on child abuse.[6] Jackman concluded that, if Romig's behavior had been reported, Pennsylvania authorities would likely have generated an "indicated report,"[7] which would have been maintained in a state database, and which would have been identified to any school where Romig applied for employment. Plaintiff has also presented evidence that, prior to hiring Romig, Pennridge obtained the required state database-generated reports on Romig's history, and that those reports were clear.

This evidence is sufficient to raise a triable issue for the jury on causation. Taken in the light most favorable to Plaintiff, this evidence would tend to show that, if the Faith Christian Defendants had made a report under the CPSL, Pennridge would have been made aware of Romig's past conduct. From this evidence, a jury could reasonably infer that Pennridge, had it been aware of such a report on potential sexual abuse or exploitation of a student, would not have hired Romig as a coach and put him in close contact with their students, including Plaintiff. Accordingly, the "causal chain of events resulting in plaintiff's injury" is not "so remote as to appear highly extraordinary." *Lux*, 887 A.2d at 1286-87. Because "a jury may reasonably differ

---

994 (Pa. Super. 2018) (proximate cause "is essentially a problem of law'). Nonetheless, the cases are consistent that, "where reasonable difference of opinion as to whether the defendant's act was the, or a proximate cause of, the injury, the matter is for the jury to decide." *Rost*, 151 A.3d at 1050 (internal quotation marks omitted).

[6] As discussed below, the Court finds that Jackman's expert testimony is largely admissible.

[7] An "indicated report" is "[a] report made . . . if an investigation by the county agency determines that substantial evidence of serious bodily injury or sexual abuse or exploitation exists." 23 Pa. C.S.A. § 6303. "Substantial evidence" is defined as "[e]vidence which outweighs inconsistent evidence and which a reasonable person would accept as adequate to support a conclusion." *Id.*

11

on whether the [Faith Christian Defendants'] conduct was a substantial factor in causing the injury," "the case must go to the jury on those issues." *Straw*, 187 A.3d at 994.

Accordingly, summary judgment in favor of the Faith Christian Defendants shall be denied.

### b. Admissibility of Expert Testimony of Brad M. Jackman

In 2016, Faith Christian Academy moved to preclude the testimony of Jackman, challenging its reliability. Following the Third Circuit's vacatur, this issue is ripe for adjudication.

Jackman is a Pennsylvania-based attorney; he has 28 years of experience in child welfare and Child Protective Services investigations, has been involved in thousands of child abuse cases, has served as the attorney for Bucks County Children and Youth Social Services Agency, and regularly trains attorneys and others in issues relating to child abuse. He has proffered an opinion that, if the Faith Christian Defendants had reported incidents relating to Romig to authorities, an "indicated report" likely would have resulted, which would have been identified to any future school where Romig sought employment.

The opinion of a qualified expert witness is admissible if: (1) it "will help the trier of fact to understand the evidence or to determine a fact in issue;" (2) it "is based on sufficient facts or data;" (3) it "is the product of reliable principles and methods;" and (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. A district court, in exercising its gatekeeping function, "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). Doing so requires the district court "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the

courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). "A court should not, however, usurp the role of the fact-finder; instead, an expert should only be excluded if the flaw is large enough that the expert lacks the good grounds for his or her conclusions." *In re Zoloft (Sertraline Hydrochloride) Prod. Liab. Litig.*, 858 F.3d 787, 792-93 (3d Cir. 2017) (internal punctuation omitted).

Here, Jackman is "qualified by virtue of specialized expertise," consisting of "practical experience as well as academic training and credentials." *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000). Jackman has an extensive professional background working with Pennsylvania state agencies in child abuse cases. Such experience is sufficient to qualify him as an expert in Pennsylvania state agencies' practices and procedures regarding child abuse. Jackman's testimony is also relevant to Plaintiff's negligence *per se* claim: by opining on the consequences of a report by Faith Christian Academy to state authorities, Jackman's opinion would "assist the trier of fact in determining the fact at issue"—specifically, whether Faith Christian's actions were the proximate cause of Plaintiff's abuse by Romig. *United States v. Ford*, 481 F.3d 215, 218 (3d Cir. 2007). For their part, the Faith Christian Defendants do not raise any argument as to Jackman's qualifications or the relevance of his testimony.

As to reliability, Jackman's opinion meets the requirements of Rule 702 and *Daubert*. Jackman based his opinion on the deposition testimony and documentary evidence produced in this case, as well as his professional experience with the relevant government agencies. Such testimony is similar to customs and practices expert testimony that is generally admissible to clarify the inner workings of organizations. *See, e.g.*, *United States v. Fumo*, 655 F.3d 288, 303 (3d Cir. 2011), *as amended* (Sept. 15, 2011); *see also Vazquez v. City of New York*, 2014 WL

13

4388497, at *12-13 (S.D.N.Y. 2014) (admitting former NYPD officer to testify as expert on "police standards and practices with respect to investigations"). While Faith Christian Academy points to certain perceived holes in Jackman's analysis—for example, that he has not personally interviewed suspects or victims for child protective services investigations—these are fair grounds for cross-examination, but are insufficient to warrant exclusion. *See In re Zoloft*, 858 F.3d at 792-93.

However, as the Faith Christian Defendants point out, Jackman's report includes certain statements that opine on the credibility of witnesses. For example, Jackman concludes that government investigators likely would have found that Mayer was "being truthful," and that Romig "had strong motives not to be truthful." Such conclusions regarding witness credibility are not properly the subject of expert testimony. *Cf. United States v. Mathis*, 264 F.3d 321, 340 (3d Cir. 2001) (expert testimony touching on credibility permissible where expert "did not intend to tell the jury whether [the witness] was lying or telling the truth"). However, these issues are appropriately addressed through objections to particular questions and lines of testimony at trial. *See Vazquez*, 2014 WL 4388497, at *13.

Accordingly, the motion to preclude Jackman's testimony shall be denied.

### c. **Punitive Damages Against Clymer and Hollenbach**

In Pennsylvania, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005). As to recklessness, the standard applicable to punitive damages is more demanding for punitive damages than in other areas of Pennsylvania law: "a punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the

14

plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk." *Id.* at 772. "Thus, a showing of mere negligence, or even gross negligence, will not suffice to establish that punitive damages should be imposed." *Phillips v. Cricket Lighters*, 883 A.2d 439, 445 (Pa. 2005). Nonetheless, punitive damages are available in negligence claims, so long as the plaintiff demonstrates that the defendant acted with the required evil motive or reckless indifference. *See Hutchison*, 870 A.2d at 772 ("The penal and deterrent purpose served by an award of punitive damages is furthered when the outrageous conduct occurs in a case sounding in negligence no less than when an intentional tort is at issue."). Examples of cases where punitive damages were held appropriate by Pennsylvania courts include a suit against a poorly run nursing home, where employees "[d]eliberately alter[ed] patient records to show care was rendered that was actually not," *Scampone v. Grane Healthcare Co.*, 11 A.3d 967, 992 (Pa. Super. 2010), and a suit against a pharmaceutical company, where evidence indicated the company "knew or strongly suspected that hormone replacement therapy increased the risk of breast cancer in post-menopausal women but failed and refused to conduct adequate studies," *Daniel v. Wyeth Pharm., Inc.*, 15 A.3d 909, 932-33 (Pa. Super. 2011).

Here, Plaintiff has presented evidence sufficient to support punitive damages on her claim against Clymer and Hollenbach. Construed in the light most favorable to Plaintiff, the record indicates that Clymer and Hollenbach both were aware of Romig's conduct towards Mayer, which included sending thousands of texts messages, some of which were explicitly sexual. Clymer conducted an investigation that drew out the pertinent details, and relayed information to Hollenbach. Nonetheless, Clymer and Hollenbach failed to report Romig's conduct. Further, they permitted him to resign under the false pretense that health reasons were

15

the impetus for his departure from Faith Christian Academy, thereby obfuscating the nature of Romig's conduct. Indeed, Romig later listed Hollenbach as a personal reference in his application to Pennridge. Based on this evidence, a jury could find that Clymer and Hollenbach exhibited "reckless indifference to the rights of others," *Hutchison*, 870 A.2d at 770, because they had a subjective appreciation of the risk that future students would be exposed to sexual abuse or exploitation by Romig, and, in conscious disregard of that risk, failed to report Romig and even assisted him in concealing the nature of what had occurred by permitting him to leave under false pretenses. *Cf. Brand Mktg. Grp. LLC v. Intertek Testing Servs., N.A., Inc.*, 801 F.3d 347, 362 (3d Cir. 2015) (under Pennsylvania law, punitive damages are available where evidence shows that company responsible for product safety "knew that its testing process had holes, and it knew that problems had arisen in the past as a result").

Accordingly, Clymer and Hollenbach's motion for summary judgment on Plaintiff's claim for punitive damages shall be denied.

An appropriate order follows.


**March 29, 2019**　　　　　　　　　　　　　　**BY THE COURT:**

　　　　　　　　　　　　　　　　　　　　　　**/s/Wendy Beetlestone, J.**

　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　**WENDY BEETLESTONE, J.**